# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 07-2092

DAVID DEICHER and MARY MEZERA,

*Plaintiffs-Appellants,*

*v.*

CITY OF EVANSVILLE, WISCONSIN,
CHRISTOPHER JONES, individually
and in his official capacity as an
employee of the City of Evansville
Police Department, and COMMUNITY
INSURANCE CORPORATION,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06 C 356—**John C. Shabaz,** *Judge.*

_____

ARGUED DECEMBER 7, 2007—DECIDED SEPTEMBER 19, 2008

_____


Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Jimmy Reiners called the police department in Evansville, Wisconsin, claiming that he needed Mary Mezera's address in order to serve

papers on her regarding property that they jointly owned. Officer Christopher Jones disclosed Mezera's address to Reiners who, as it turns out, is her abusive ex-husband against whom she had a restraining order. Mezera and her husband, David Deicher, sued the City of Evansville, Wisconsin, Officer Jones, and the City's insurer, Community Insurance Corporation, alleging that Officer Jones violated the Driver's Privacy Protection Act ("DPPA") when he disclosed Mezera's address. After a jury verdict in the plaintiffs' favor, the jury awarded $25,000 in damages.

The plaintiffs appeal, contending that the district court erred when it answered a question from the jury by providing the filing date of the complaint, which was not in evidence, but not the Notice of Claim, a properly admitted exhibit filed prior to the complaint that indicated the plaintiffs' intent to file suit. We find that the district court properly took judicial notice of the complaint filing date, but because there is a reasonable possibility that this date confused the jury, the court erred by failing to provide the jury with the Notice of Claim.

The plaintiffs also object to the district court's calculation of the attorneys' fees, maintaining that the court committed error by limiting the attorneys' fees to the amount won at trial; however, since a new trial on damages is warranted, we need not reach this issue. Therefore, we reverse the judgment and remand for a new trial on damages and a new determination of attorneys' fees.

## I. BACKGROUND

Mary Mezera divorced her then-husband Jimmy Reiners after years of physical and psychological abuse. On October 1, 2005, Mezera and her new husband, David Deicher, left their home in Evansville, Wisconsin, and moved to a new location in Beaver Dam, Wisconsin, which they kept secret from Reiners. On February 2, 2006, Reiners called the Evansville Police Department looking for Mezera's home address, allegedly for the purpose of obtaining past due mortgage payments on property that he jointly owned with Mezera. Officer Jones placed Reiners on hold, obtained the plaintiffs' new address from the State of Wisconsin motor vehicle records, and provided it to Reiners. He claims that he provided the address after doing a brief check of Wisconsin's civil litigation database, but this database also contained Reiners's and Mezera's divorce decree.

Reiners then attempted to contact the plaintiffs by leaving a note in their mailbox. Mezera testified that following the disclosure of her address, she received a threatening phone call from Reiners; that she came home on the day of Reiners's birthday to find a table overturned outside of her home; and that she lived in constant fear that Reiners would return to harm her, Deicher, or their animals. The plaintiffs complained to the Evansville Police Department, which began an investigation. The Department concluded that Officer Jones made a serious error by disclosing the plaintiffs' address and he was reprimanded.

On April 22, 2006, the plaintiffs served a letter on the Evansville Police Department entitled "Notice of Claim,"

which informed the Department that the plaintiffs intended to file a lawsuit. The plaintiffs filed suit on June 30, 2006 against Officer Jones, the City of Evansville, and its insurer for violating the DPPA. That statute prohibits anyone from obtaining or disclosing information from motor vehicle records, subject to certain exceptions. *See* 18 U.S.C. § 2724(a).

At trial, the plaintiffs argued that Officer Jones falsified his report regarding the incident with Reiners to provide a potential defense to the plaintiffs' DPPA claim. There is an exemption to DPPA liability if the information was given to a third party for "use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court." 18 U.S.C § 2721(b)(4).

Officer Jones's report, which he claimed to have prepared a few days after he disclosed the plaintiffs' address, stated that the plaintiffs' address was provided to Reiners for "service of process" of documents relating to the foreclosure of a trailer that Mezera and Reiners owned during their marriage. The report further states that Officer Jones had run Reiners's name through a federal law enforcement database before giving out the plaintiffs' address. The plaintiffs claim, however, that this information was entered into the computer system months after the incident, specifically after the Department received the plain-

tiffs' Notice of Claim indicating that they planned to file suit over the DPPA violation.

At trial, the plaintiffs maintained that the Police Department initiated an extensive coverup of this incident. Officer Jones testified that he ran a background check on Reiners through a federal law enforcement database prior to disclosing the plaintiffs' address, which revealed no criminal background. There was no record in the system, however, of Officer Jones ever accessing state or federal records on February 2, 2006. In addition, the Chief of the Evansville Police Department acknowledged that he wrote a letter to the manager of the federal law enforcement database asking whether Officer Jones conducted the requisite background check on Reiners and received a response that Officer Jones had never run Reiners's name through the federal database. Although Officer Jones was reprimanded for disclosing the plaintiffs' address, on cross-examination the Chief admitted that Officer Jones was not disciplined for stating in his official police report that he had run Reiners through the federal database, nor was the report ever corrected to reflect that the federal background check had never been conducted.

Officer Jones also testified that he ran a background check on Reiners through various Wisconsin databases prior to disclosing the plaintiffs' address, but this information was not in his report and the records from the database showed that Reiners's name was run days after he contacted Officer Jones. The Wisconsin databases also disclosed that Mezera had a restraining order against

Reiners, although Officer Jones denied under oath having seen the order. Had he actually run the background check, the plaintiffs contend, Officer Jones would have discovered that Reiners had a violent history and a restraining order against him that would have alerted Officer Jones not to provide Reiners with the plaintiffs' address. Furthermore, the plaintiffs argue that Reiners never mentioned anything about "serving papers" in his call with police, undermining the truthfulness of Officer Jones's report.

After a one-day trial on liability, the jury found that Officer Jones provided the plaintiffs' address to Reiners in violation of the DPPA and returned a verdict in their favor. During the trial to determine damages, the jury sent a question to the court asking for the date the case was filed. That date had not been entered into evidence. Both the parties objected, the defendants because they were not sure why the jury needed the date and the plaintiffs because they believed that what the jury actually wanted to know was the date when the Notice of Claim had been served on the defendants, not the date the complaint had been filed. The district court provided the date the case had been filed, commenting: "Over the objection of counsel, the Court is going to provide this very meaningful piece of information to the jury. And I'll tell them also the sun rises in the east and sets in the West [sic] if they want to know."

The jury awarded Mezera $14,500 and Deicher $1,000 in compensatory damages. The latter was increased upon the plaintiffs' motion to the statutory minimum of $5,000.

The jury also awarded the plaintiffs $5,500 in punitive damages, for a total damages award of $25,000. These amounts were substantially less than the amounts that the plaintiffs asked for at trial, where they contended that they suffered severe emotional trauma after learning that Reiners knew where they lived.

The plaintiffs moved for a new trial based on the district court's communication to the jury of information outside the record, and they maintained that the punitive damages award was grossly inadequate. They also sought attorneys' fees under the DPPA, 18 U.S.C. § 2724(b), seeking the lodestar of $192,062.50 incurred in litigating their case. The district court first denied $50,345 of the fee request, stating that certain billed hours were duplicative, excessive and/or unnecessary. Rather than awarding the $141,717.50 remaining after this reduction, however, the court then limited the fee award to $25,000 on the rationale that the attorneys' fees should not exceed the amount the jury awarded to the plaintiffs in damages.

The plaintiffs' counsel then moved for an additional $13,276 in fees for litigating the fee award. The district court awarded one-eighth of this request, or $1,659.50, reasoning that since the plaintiffs had received one-eighth of what had been requested in fees for the main litigation, they should receive one-eighth of the amount requested for litigating the fee award. The court then denied the plaintiffs' motion for a new trial on damages.

## II. ANALYSIS

### A. The district court was entitled to take judicial notice of the complaint filing date.

We review the district court's denial of a motion for a new trial for an abuse of discretion. *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007). The plaintiffs claim that a new trial is required on the issue of damages because the district court answered a jury question with information extrinsic to the record—the complaint filing date—and committed error *per se* which, the plaintiffs maintain, by definition means that the improper communication influenced the jury's verdict. Specifically, they argue the district court should have provided the jury with the date of the Notice of Claim and not the complaint filing date which, they claim, was improper extrinsic evidence. We review the district court's answer to a jury question for an abuse of discretion. *United States v. Hewlett*, 453 F.3d 876, 880 (7th Cir. 2006); *United States v. Sababu*, 891 F.2d 1308, 1333 (7th Cir. 1989).

It is undisputed that the complaint filing date was not admitted into evidence. *See United States v. McClellan*, 165 F.3d 535, 551 (7th Cir. 1999) ("Should the jury request clarification on a matter during deliberations, it is when the court responds with a misleading, incorrect, unclear or unresponsive (i.e., not with 'concrete accuracy') statement of law or fact, *or with facts not in evidence*, that we might have cause for concern.") (emphasis added). However, the complaint filing date, similar to other documents that are either directly related to or produced during the course of the proceedings, does not generate the same

concerns that are present when evidence that is outside the scope of the proceedings is introduced. *See In re Hanford Nuclear Reservation Litig.*, 497 F.3d 1005, 1033 (9th Cir. 2007) (finding that evidence from the defendant's first trial, although not introduced into evidence and improperly referenced during the second trial, was not extrinsic information); *Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2001) (taking judicial notice of state court documents that were not admitted into evidence but had a direct relationship to the appeal).

We could find no cases where circuit courts have resolved the issue of whether a court may take judicial notice of the complaint filing date, but several district courts have held that a court may take judicial notice of the date a complaint is filed, and once it does so, that information is no longer extrinsic to the record. *See, e.g., Gilman v. Schwartz*, No. 05 C 2222, 2006 WL 2827409, at *1, n.1 (E.D. Cal. Sept. 29, 2006) (taking judicial notice of the complaint filing date because that date was essential to the adjudication of the issues in the case); *Gulf Ins. Co. v. Glasbrenner,* 343 B.R. 47, 63 (S.D.N.Y. 2006).

Additionally, a court can take judicial notice of matters of public record. *Pugh v. Tribune Co.,* 521 F.3d 686, 691, n.2 (7th Cir. 2008) (taking judicial notice of stock prices)*; see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (holding that a district court can take judicial notice of a waiver of extradition, which is a matter of public record, but erred by taking judicial notice of disputed facts). Since the complaint filing date is a matter of public record and subject to judicial notice, we find that it is not extrinsic evidence.

**B. The district court abused its discretion when it failed to provide the jury with the Notice of Claim during deliberations.**

Although the district court was entitled to take judicial notice of the complaint filing date, its decision to provide this information to the jury brought out a fundamental error in the proceedings: its failure to allow the jury to consult the Notice of Claim during deliberations even though the plaintiffs had requested the jury be allowed to do so. A district court's answer to a jury's question must be viewed in light of the issues presented at trial. *See, e.g., United States v. Watts,* 29 F.3d 287, 291 (7th Cir. 1994). The answer to a jury question might implicate other evidence presented in the case, *id.,* and this is the situation with the Notice of Claim exhibit that was excluded from the jury here.

Generally, it is within the trial court's discretion to determine which exhibits are provided to the jury during deliberations; we review this decision only for a clear abuse of discretion. *United States v. Biggs,* 491 F.3d 616, 623 (7th Cir. 2007); *United States v. Arroyo,* 406 F.3d 881, 886 (7th Cir. 2005). Such discretion is usually exercised to exclude exhibits that neither party has relied on, that have no relevance to any of the issues central to the case, or that are cumulative, prejudicial, confusing, or misleading. *See* Fed. R. Evid. 403 (allowing the judge to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation

of cumulative evidence"); *see also United States v. Gross*, 451 F.2d 1355, 1359 (7th Cir. 1971) (affirming the exclusion of exhibits that contained conflicting statutes and ordinances that had no bearing on issues in the case). The clear abuse of discretion standard is deferential and recognizes that "[t]he admission or exclusion of evidence is a matter particularly suited to the broad discretion of the trial judge." *United States v. Casoni,* 950 F.2d 893, 902 (3rd Cir. 1991) (internal quotation marks and citation omitted). In applying this standard, we give "special deference" to the district court's handling of the exhibits, *Biggs*, 491 F.3d at 623, but we must still consider whether the district court has exercised its discretion in a reasonable manner. *See Cincinnati Ins. Co. v. Flanders Elec. Motor Service, Inc.*, 131 F.3d 625, 628 (7th Cir. 1997) ("A decision constitutes an abuse of discretion when it is 'not just clearly incorrect, but downright unreasonable.'") (citation omitted); *see also Casoni*, 950 F.2d at 902 (noting that the discretion accorded to district courts "is not unlimited").

The situation before us, where the appellant argues that a district court has denied a request to have the jury consult a properly admitted exhibit, seems to be rare. More commonly, a party argues that a jury has been exposed to information not admitted into evidence. In the latter case, to obtain a new trial, a party must show that it was prejudiced by the improper exposure. *See United States v. Magana*, 118 F.3d 1173, 1183 (7th Cir. 1997) ("Even if a defendant alleges that improper material was before the jury . . . he must still show 'that there was some prejudice or substantial right affected by the presence.'") (citation omitted); *see also Bankcard America, Inc. v.*

*Universal Bancard Systems, Inc.,* 203 F.3d 477, 483 (7th Cir. 2000) ("When unapproved material reaches the jury, the trial court must decide whether there is a reasonable possibility the material altered the jury's verdict.").

We have also required a showing of prejudice for properly admitted exhibits that allegedly improperly influenced the jury. *United States v. Best*, 939 F.2d 425, 429 (7th Cir. 1991) (en banc) (finding that the jury was not prejudiced by exposure to evidence that had been properly admitted at trial); *see also United States v. Parker*, 491 F.2d 517, 521 (8th Cir. 1973) ("Probative value of evidence admitted must be weighed against possible prejudice that may result if the exhibits are sent to the jury."). Thus, we hold that a new trial is required if there is a reasonable possibility that a party is prejudiced by the district court's failure to provide certain exhibits to the jury, even if the exhibits are properly admitted. *See generally Bankcard America, Inc.,* 203 F.3d at 480-81 ("A new trial is granted if the verdict is against the manifest weight of the evidence or if a prejudicial error occurred. Even if errors occurred, no new trial is required if the errors were harmless."); *cf. Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132, 1142 (7th Cir. 1992) (where jury was exposed to extraneous evidence, the inquiry is "whether there is a reasonable possibility that the communication altered [the jury's] verdict") (internal quotation omitted); *Haugh v. Jones & Laughlin Steel Corp.,* 949 F.2d 914, 917 (7th Cir. 1991) (same). Where a district court has unreasonably excluded exhibits from the jury to the detriment of a party and there is a reasonable possibility that the exclusion of this evidence influenced the verdict, this is a clear abuse of the district court's discretion.

Applying these standards, we find that the plaintiffs were prejudiced by the district court's failure to provide the jury with the Notice of Claim, and its refusal to do so was a clear abuse of discretion.[1] When the jury asked for the complaint filing date, both the plaintiffs and the defendants objected. The plaintiffs specifically asked that the jury be given the date of the Notice of Claim and argued that what the jury really wanted to know was when the defendants learned about the lawsuit, since during trial the plaintiffs had provided arguments and evidence on this point. The district court refused. After reading the question from the jury, the following exchange took place between the district court judge and the plaintiffs' counsel:

> **Plaintiffs' counsel:** Your honor, I renew our request that they get the date of claim.
>
> **The Court:** I deny that request. Because that isn't even close to what they want. You don't know. I know

---

[1] Although on appeal the plaintiffs couched most of their arguments in terms of the complaint filing date being inadmissible because it was extrinsic to the record, there is no issue of waiver here. The plaintiffs specifically reference the district court's failure to provide the jury with the Notice of Claim in their brief, objected strenuously in the district court over this specific issue, and raised it in their motion for a new trial. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 610 (7th Cir. 2006) ("To preserve an issue for appellate review, a party 'must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection.'") (internal citation omitted).

exactly what they want. They don't even know there is a notice.

. . .

**The Court:** What's the objection to sending them the date this case was filed?

**Plaintiffs' counsel:** Because I don't believe that's what they're interested in, your Honor. What they want to know is when these people first learned that there might be a lawsuit. We made an argument about that. We presented an exhibit about that. That's why we put the exhibit in showing the notice of claim, and we questioned Chief McElroy about it. That's what they're interested in is when the Defendants learned about the lawsuit. I think. And the only way to find out if that's the cases is to give them that exhibit, which is admitted in evidence. If that's not the one they want, they's [sic] can come back with the question, "No. We want to know when the suit was filed." At that point, you can give them that.

**The Court:** I can give it right now, and I am giving it right now.

We are particularly troubled by the district court's statement that "They don't even know there is a notice" when plaintiffs' counsel asked that the Notice of Claim be sent back to the jury. Given that the Notice of Claim was a properly admitted exhibit and central to the plaintiffs' theory of damages, the district court's statement was clearly wrong. In fact, it was very pertinent to the proceedings and was relevant to whether there was a

willful violation of the DPPA. *See* 18 U.S.C. § 2724(b) (stating that the court may award punitive damages "upon proof of willful or reckless disregard of the law").

Furthermore, the district court's decision to provide the complaint filing date to the jury, but not the Notice of Claim date, skewed the proceedings in favor of the defendants. In *McClellan*, 165 F.3d at 551, we held that "a judge's response to a jury's question must not highlight one witness' testimony over another's"; the same rationale applies when the district court's response to a jury's question implicates exhibits that provide not only context for the answer given to the jury, but might also clarify any potential discrepancies or confusion that result from answering the question in the first place. *See United States v. Carani*, 492 F.3d 867, 874 (7th Cir. 2007) ("[T]he district court retains broad discretion in deciding how to respond to a question propounded from the jury and . . . the court has an obligation to dispel any confusion quickly and with concrete accuracy.") (citing *United States v. Sims*, 329 F.3d 937, 943 (7th Cir. 2003)).

The defendants claim that there may be another explanation for the jury's request for the complaint filing date—that it wanted to determine whether or not the plaintiffs had incurred medical expenses and treatment prior to the date the action was filed. That is certainly a fair reading of the jury's request for the complaint filing date, for the jury also asked several questions regarding the plaintiffs' medical expenses. But there is a reasonable possibility that the jury's request for the complaint filing date was to determine if the case was filed before or after the final police report was completed. Given this

possibility, we cannot say that the jury was not prejudiced by the district court's failure to provide it with the Notice of Claim.

The district court had several options at its disposal: it could have given all of the exhibits to the jury at the close of evidence, provided the jury with the Notice of Claim with a proper limiting instruction, given a factually correct explanation why it was not appropriate for the exhibit to be given to the jury at all, or it could have opted to provide neither date to the jury. *See United States v. Salerno*, 108 F.3d 730, 745 (7th Cir. 1997) ("[A]s long as the district court is evenhanded in its evidentiary rulings, [it] has wide discretion in determining whether an exhibit will be allowed to go into the jury deliberation room.") (citation omitted); *United States v. Samples*, 713 F.2d 298, 303 (7th Cir. 1983) (finding that "the district judge did not selectively send only prejudicial evidence to the jury room [because] [a]ll exhibits, the government's and the defendant's, were given to the jury"). We likely would have found all of these to be a reasonable exercise of discretion.

Normally, the district court's failure to provide a properly admitted exhibit to the jury during deliberations would not cause an alarm: the court is entitled to instruct the jurors to rely on their collective memories in instances where the trial was short, as it was here, and the information should be fresh in the jurors' minds. *United States v. Guy*, 924 F.2d 702, 708 (7th Cir. 1991) (finding that the refusal to provide a jury with a transcript is not an abuse of discretion when the trial is short and the jurors should be able to remember the pertinent testimony).

Here, however, we find that the district court's exclusion of the Notice of Claim from the jury deliberations was an abuse of discretion. The amount awarded in damages reflects the jury's skepticism of the plaintiffs' theory of liability, and indicates possible confusion between the date of the complaint and the date of the Notice of Claim. The plaintiffs requested one million dollars in punitive damages and alluded that even more might be appropriate for compensatory damages, but the plaintiffs received only a small fraction of that amount. If the plaintiffs are ultimately awarded the same amount on remand, it should be done upon consideration of the most pertinent evidence in the record.

In reaching this outcome, we note that this decision should not, in any way, be seen as diminishing the discretion that district courts have to determine which exhibits should be provided to the jury during deliberations. But this discretion cannot be exercised in a manner that unduly burdens the jury's ability to come to a fair and accurate resolution of the issues in the case. We urge the district court to revisit its established practice (though not stated in writing in the rules of the court or anywhere else) of allowing only certain exhibits to go back to the jury, specifically when an exhibit has been properly admitted into evidence, is integral to the issues in the case, and a party requests that the jury receive it.

Accordingly, we find that the plaintiffs require a new trial on damages, and we need not reach the question of whether the district court erred in calculating attorneys' fees. *See generally Pardo v. Hosier*, 946 F.2d 1278, 1285 (7th

Cir. 1991) ("When a judgment on which an award of attorneys' fees to the prevailing party is based is reversed, the award, of course, falls with it."). We note, however, that the way in which the district court made its fee calculations is likely unreasonable in light of the fact that the plaintiffs ultimately prevailed at trial. Here, the district court relied solely on the plaintiffs' limited damages award in cutting their attorneys' fee recovery by almost 90%. After finding that some hours were duplicative and unnecessary, the district court initially found that the plaintiffs' counsel was entitled to a lodestar of $141,717.50 (an amount that the plaintiffs dispute), but the court went even further and reduced this amount to $25,000 to match the $25,000 judgment awarded by the jury. It also applied a similar rationale in reducing the amount that the plaintiffs requested for attorneys' fees in litigating the fee award—the district court awarded the plaintiffs one-eighth of the fees requested in connection with the litigation of their fee petition because the plaintiffs recovered one-eighth of the fees that they had requested for litigating the case.

While the plaintiffs' success at trial is certainly one consideration in reducing fees, *see Simpson v. Sheahan*, 104 F.3d 998, 1001 (7th Cir. 1997), this factor, although important, is not necessarily dispositive. *See Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 558 (7th Cir. 1999) ("although the fee award need not be proportionate to the amount of damages a plaintiff actually recovers, it is a factor that a court should consider when contemplating a reduction of the modified lodestar amount"); *Simpson*, 104 F.3d at 1001 (besides success at trial, other considerations in

reducing attorneys' fees are the significance of the legal issue and the public purpose of the litigation).

The defendants' counsel stated in oral argument that its fees were approximately $120,000 to litigate this case, a fact that provides some indication that the $142,000 lodestar that the district court initially calculated for the plaintiffs' attorneys' fees was a reasonable amount to expend on litigation. It cannot be the case that the prevailing party can never have a fee award that is greater than the damages award, or in the alternative, if the party asks for a bigger damage award than it actually receives, that any fees incurred in litigating the case are automatically reduced to the same amount as the damage award. In any event, the district court's decision to provide the complaint filing date but exclude the Notice of Claim exhibit from the jury prejudiced the plaintiffs, and we conclude that this was an abuse of discretion, requiring a new trial on damages.

## III. CONCLUSION

Accordingly, we REVERSE the decision of the district court and REMAND for a new trial on damages. Circuit Rule 36 shall apply.