Ayanna **WALKER**, Plaintiff,

v.

**CALUMET CITY, ILLINOIS,**
Defendant.

No. 07 C 6148.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 25, 2008.

Decision Supplementing Memorandum
Sept. 29, 2008.

Philip C. Stahl, Donald P. Bunnin, Patrick Thomas Nash, Maggie M. Hanel, Grippo & Elden LLC, Chicago, IL, for Plaintiff.

John B. Murphey, Rosenthal, Murphey, Coblentz & Janega, Chicago, IL, Mark H. Sterk, Michael Joseph Hayes, Jr., Richard F. Bruen, Jr., Robert R. Wilder, Odelson & Sterk, Ltd., Evergreen Park, IL, for Defendant.

## MEMORANDUM ORDER

MILTON I. SHADUR, Senior District Judge.

All that remains in this once-hotly-contested but now closed case is the parties' dispute as to the allowability or nonallowability of a fee award to counsel for plaintiff Ayanna Walker ("Walker") under 42 U.S.C. § 1988.[1] But "all that remains" is not at all a reaffirmation of T.S. Eliot's "This is the way the world ends Not with a bang but a whimper,"[2] for the legal efforts by Walker's counsel that ultimately led to her material success, coupled with the dismissal of the action on mootness grounds, were intensive, extensive and (as the end of this opinion confirms) expensive.

There is no disagreement between the litigants as to the sea change in Section 1988 jurisprudence that was wrought by *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), which rejected the catalyst theory that had previously been applied to determinations under that statute. And both sides concur in the position that *Buckhannon* and our Court of Appeals' very recent application of that decision in *Zessar v. Keith*, 536 F.3d 788 (7th Cir.2008) should control the resolution of the fee-shifting dispute.

In that respect the most recent (and final) submission by Calumet City ("City") correctly says that Walker and her counsel had sought to land bigger fish: a class-action declaration that the original ordinance that impaired Walker's ability to sell her property was unconstitutional. City avoided that ultimate confrontation by amending its ordinance, and if that had been all there was to it—if that amendment alone had mooted this case—nothing more than the catalyst theory could have been invoked by Walker, and *Buckhannon* would have commanded the denial of any Section 1988 fee award.

But that was *not* all. City's recharacterization of events may be ingenious, but it is overly simplistic, when its Supp. Mem. 4 says:

> There can be no argument—in this case the "defendant's change in conduct" was *not* "brought about by a judicial act exhibiting sufficient finality." It is the other way around. The judicial act of finality was brought about by the change of conduct.

To the contrary, when City receded to the position that Walker was currently free to

---

1. All further references to Title 42's provisions will simply take the form "Section___."

2. From *The Hollow Men.*

sell her property, she still remained vulnerable to future adverse action by City. In response to the consequent urging by Walker's counsel, this Court *ordered* City to confirm some important further undertakings as a precondition to this Court's determination that the case had become moot. As the May 22, 2008 Final Order of Dismissal ¶ 3 specified, to satisfy this Court's express requirements City not only committed itself to not otherwise enforcing its Point of Sale Inspection Ordinance as to Walker's property (other than requiring payment of the transfer tax) but also, and most importantly, made this permanent commitment:

> City has certified that the Subject Property is a legal nonconforming use under City's Zoning Ordinance, a status which runs with the land, and is subject to loss or elimination only for the reasons set forth in Section V of the Calumet City Zoning Ordinance, "Nonconforming Buildings and Uses," as that Ordinance currently exists.

To be sure, Walker did not thus obtain class-based relief (although it remains to be seen whether, in any of the remaining actions pending against City—or in any future actions—brought by property owners who also claim legal nonconforming use status, offensive issue preclusion may prevent City from relitigating the issues that it was forced to agree to in the Final Order of Dismissal here). But that is a red herring, because Walker does not seek fees for work done on class certification.

In summary, the situation here fits precisely the articulation of the *Buckhannon* standards, as set out in *Zessar*, 536 F.3d at 795–96 (emphasis added), defining when a plaintiff is a prevailing party for the purpose of awarding attorney's fees under Section 1988:

> It is well-established that "prevailing party" as used in federal fee-shifting statutes like § 1988 includes only those

parties that have achieved a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835. In other words, "to qualify as a prevailing party, a civil rights plaintiff must obtain *at least some relief* on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

\* \* \*

A party is considered prevailing for § 1988 purposes when the court enters final judgment in its favor on *some portion* of the merits of its claims. *Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835 (citing *Farrar*, 506 U.S. at 113, 113 S.Ct. 566).

\* \* \*

Cases will sometimes arise where despite there being no final judgment or consent decree, the legal relationship of the parties will be changed due to a defendant's change in conduct *brought about by a judicial act exhibiting sufficient finality.*

And that being the case, Walker's motion for a Section 1988 award is granted.

That then logically leads to the question of quantification of the Section 1988 award. In that respect Walker's Reply in Support of Motion for Attorney's Fees concludes by explaining the substantial extent to which the aggregate fees incurred have been discounted for current purposes—through the end of July 2008, she seeks the sum of $160,459.50 in attorney's fees and $7,044.11 in expenses, plus interest.

To enable this Court to enter an appropriate award, a responsive input from City's counsel is needed—and promptly—as to the proper amount to be awarded. Without limiting the issues in that respect, on the subject of interest (a matter

that has been addressed by this Court, as Walker's counsel points out, in *Lippo v. Mobil Oil Corp.*, 692 F.Supp. 826, 838–43 (N.D.Ill.1988)), this Court draws the attention of both sides' counsel to the book issued in 1999 by the American Bar Association's Section of State and Local Government Law, authored by Professor Russell Lovell and titled *Court–Awarded Attorneys' Fees: Examining Issues of Delay, Payment, and Risk,* and most particularly to the software program developed by Professor Lovell to provide a more precise interest determination (based on the value of the use of money) than the rough (and almost invariably erroneous) calculation that results from an across-the-board use of lawyers' current hourly rates as a surrogate for that more accurate figure.

### SUPPLEMENT TO MEMORANDUM ORDER

MILTON I. SHADUR, Senior District Judge.

This Court's September 25, 2008 memorandum order ("Order"), having rejected the effort by counsel for Calumet City ("City") to escape liability for the attorney's fees earned by counsel for plaintiff Ayanna Walker ("Walker") in this 42 U.S.C. § 1983[1] lawsuit, ordered City's counsel to file a prompt response dealing with quantification of the fee award. City's counsel more than met the requirement for promptness when on the very next day, September 26, they filed "Calumet City's Supplemental Memorandum on the Issue of Attorney's Fees (Pursuant to Order of 9/25/08)"—but regrettably their

response was fatally flawed factually and legally. This opinion hastens to narrow the focus of the dispute to the only item left open: the hourly rates properly chargeable by Walker's counsel for use in calculating the lodestar figure.

City's counsel, having lost their frontal attack on any fee award by an unpersuasive effort to invoke *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), now seek to minimize the award by characterizing Walker's counsel as having obtained only partial success. But that skewed analysis rests on a fundamental mischaracterization of this lawsuit, which is after all *Walker's* lawsuit.[2]

In that respect City and its counsel prefer to gloss over (or rather to ignore entirely) the facts (1) that Walker owns real estate in Calumet City that has been and is a legal nonconforming use and (2) that her goal from the beginning has been to preserve the full value of her property against the threat posed by City's then-enacted Ordinance. This lawsuit provided her a total victory in that regard, not a partial one: This Court's May 22, 2008 Final Order of Dismissal compelled City not only to confirm that legal-nonconforming-use status but also to do so with a commitment that ran with the land, thus assuring the continuing marketability of Walker's property as comprising multiple occupancy residential units.

But, say City's counsel, Walker did not gain that victory by succeeding in her original prayer to have the Ordinance declared

---

1. All further references to Title 42's provisions will simply take the form "Section—."

2. Walker's counsel had previously represented the Realtor Association of West/South Suburban Chicagoland in mounting a constitutional attack on City's Point of Sale Inspection Ordinance (the "Ordinance"). That ef-

fort was ultimately rejected by our Court of Appeals in *MainStreet Org. of Realtors v. Calumet City,* 505 F.3d 742 (7th Cir.2007), and counsel and their Association client have swallowed that loss: No part of the services rendered in that case are the subject of the current Section 1988 application.

unconstitutional. What irony—or better still, what chutzpah. That posture of affairs was created by City and its counsel themselves—they amended the original Ordinance before *its* constitutionality could be adjudicated, then sought unsuccessfully to moot Walker's challenge to the revised Ordinance, but without providing her with the real protection she needed to preserve the value of her property. City's position is strikingly reminiscent of the old story about the defendant who, having murdered both his parents, sought the court's mercy because he was an orphan. Moreover, Walker's victory is measured by the fact that she accomplished it through her counsel's direct efforts, not the particular theory by which her counsel succeeded.

It bears repeating, as Order at 2–3 stressed, that the amended Ordinance that was generated by City and its counsel would have afforded Walker less than the full relief that she obtained through her counsel's efforts and this Court's insistence, as embodied in the Final Order of Dismissal. This case calls directly into play the lessons taught by the seminal opinion in *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citation and footnote omitted):

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it diffi-cult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.[3]

In short, Walker has scored a total victory as to her property, and her lawyers are accordingly entitled to total compensation, even though she did not prevail on all theories advanced on her behalf.[4] And this is quite apart from the added factor that City's opposition is extraordinarily niggardly, for it was the final order that Walker obtained against City, rather than any merits-based loss on Walker's part, that averted a ruling on constitutionality of the earlier Ordinance.[5]

---

**3.** [Footnote by this Court] City's citation to, and its attempted reliance on, our Court of Appeals' ten-day old opinion in *Deicher v. City of Evansville,* 545 F.3d 537, 545–46, 2008 WL 4276588, at *8 (7th Cir.2008) is mysterious indeed. If anything, given Walker's total success in achieving her substantive goal, what was said in *Deicher* cuts in Walker's favor rather than City's.

**4.** As Order at 3 said, Walker does *not* seek fees for her counsel's work done in seeking class certification.

**5.** No holding is made or implied here as to what the result of a merits-based decision would have been. But that is of no moment, because the language quoted above from *Hensley* confirms that no reduction in fees would have been occasioned even by a rejection of the constitutional attack.

This Court has accordingly exercised its equitable judgment called for by *Hensley,* 461 U.S. at 436–37, and it approves the totality of the hours encompassed in Walker's submission. That leaves open only (1) the issue of hourly rates, as to which Walker's submission is lacking an appropriate confirmation supporting the characterization that the figures used are indeed "their standard hourly rates" (Walker's Reply at 14) and (2) the amount of fees ascribable to time spent in August through October 2008 in connection with the current matter.[6] When Walker's counsel provides that information together with a calculation of the interest component of the award,[7] this Court will be in a position to enter the appropriate order.

---

6. Walker's success in the present dispute as to fees entitles her to recover the fees-on-fees component as well.

7. City's currently-filed response correctly points out that Walker's application reflects the lawyers' historical hourly rates in effect in both 2007 and 2008, the only two years involved. That may well obviate the need to employ the more complex (though more precise) interest calculation suggested in the Order. This Court therefore leaves to Walker's counsel the way in which the ultimate submission takes account of the interest component of the award.