**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 3, 2010[*]
Decided August 3, 2010

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-3289

| | |
|---|---|
| TERRANCE EDWARDS, <br> *Plaintiff-Appellant*, <br><br> *v.* <br><br> JEREMY STANIEC, et al., <br> *Defendants-Appellees*. | Appeal from the United States District Court for the Western District of Wisconsin. <br><br> 08-cv-352-bbc <br><br> Barbara B. Crabb, <br> *Judge*. |

**O R D E R**

Terrance Edwards, a Wisconsin prisoner, filed this lawsuit under 42 U.S.C. § 1983, claiming that five correctional officers used excessive force against him. Before trial the district court denied Edwards's request for the recruitment of counsel. The court granted the defendants' motion to exclude Edwards's medical records reflecting the treatment that he received after the incident, concluding that the records were inadmissible hearsay. The

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

court also excluded state administrative regulations describing the proper use of force. A jury found in favor of the defendants, and the district court denied Edwards's motion for a new trial. Edwards appeals, but because we conclude that none of his arguments warrant a new trial, we affirm.

The basic events are undisputed. A correctional officer observed Edwards cutting his arm with a razor in the shower of the segregation unit. The officer called for assistance and ordered Edwards to hand over the razor, but Edwards refused and continued to cut his arm. After officers twice sprayed Edwards with a chemical agent, he relinquished the razor and placed his hands through the cell door, allowing them to place him in handcuffs. The officers then placed Edwards in full restraints and escorted him to a cell for a strip search. In the process, the officers twice used force: the officers first forced Edwards to kneel in order to apply leg restraints and later banged his head into a cell door.

At trial Edwards elaborated on these events as follows. Once he relinquished the razor, the officers handcuffed him and tethered him to the shower cell door in order to place him in full restraints. The officers first applied a waist restraint and then ordered him to kneel before applying leg restraints. But he could not comply because the waist restraint was tethered to the door and it was too short to allow him to kneel. Officers ordered him to "stop resisting" and kicked him in the ribs, but ultimately applied the leg restraints while he remained standing. Once they escorted him to the strip cell, one of the officers pulled on his right arm, causing the handcuffs to overstretch his wrist. When he complained, another officer banged his head against the door. After the incident, he was treated for a knot on his forehead and has continued to experience tingling in his hands and frequent headaches. He takes prescription medications to control the headaches and keeps a headache diary to monitor his pain.

Five officers furnished a slightly different account, focusing on why they applied force but not disputing that their use of force injured Edwards. According to the officers, Edwards was not wearing the waist restraint when they ordered him to kneel. When he disobeyed their order, they "assisted him" to a kneeling position so leg restraints could be applied. The waist restraint, the officers testified, was applied after Edwards's legs were secured. After escorting him to the strip cage, a nurse evaluated Edwards and concluded that the self-inflicted cuts on his arm were superficial. Edwards remained in full restraints while the officers conducted a strip-search, but he again became agitated and aggressive and lunged at one of the officers. In an attempt to protect his colleague and to subdue Edwards, a second officer "directed" him into the cell door, a technique called a "vertical wall stun." Edwards was subdued, cleaned, and placed in an observation cell.

At the close of evidence but before closing arguments, the jury submitted five questions to the judge. They asked for additional information about the reasons a prisoner might be placed in segregation and whether those reasons would affect the officers' actions in dealing with a prisoner, whether any of the defendants had kicked Edwards when he was cuffed to the shower door or witnessed Edwards being kicked, what Edwards might have done if he had not been placed in restraints, and, lastly, the jury asked the defendants to describe "lunging" and "the vertical wall stun." Over Edwards's objection, the district court decided not to answer the questions because the evidence portion of the trial was complete, and it instead instructed the jury to consider the evidence presented during the trial. The court also refused Edwards's request that the jury be instructed on joint and several liability, explaining that the special verdict form reflected that if the jury found any one of the defendants had used excessive force, Edwards would be entitled to full damages. The jury returned a verdict in favor of the defendants, and the district court denied Edwards's motion under Federal Rule of Civil Procedure 59(a) for a new trial.

We review a district court's denial of a motion for a new trial for abuse of discretion and will not set aside a verdict unless the moving party suffered prejudice from the asserted error. *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 826 (7th Cir. 2010). Edwards first challenges the district court's evidentiary ruling excluding his medical records as inadmissible hearsay. The records included "progress notes" recorded by the nurse during two examinations of Edwards on the day of the incident and later in follow-up visits. In her initial examination, the nurse noted only that Edwards had superficial cuts on his left forearm. In an examination an hour later, Edwards reported a "hickey" on his head, which he told her he had received when the officers "were handling him roughly." He also reported that his wrist was injured and his fingers were numb. The nurse noted a bump on his forehead and found Edwards's wrist tender to the lightest touch but reported no swelling or restricted movement. In the following weeks, Edwards complained of frequent headaches and was prescribed Propranolol for headache prevention and Excedrin for pain.

In denying Edwards's motion for a new trial, the district court concluded that although the records may indeed have been admissible, no new trial was warranted. The court concluded that the records would not have been materially helpful in establishing Edwards's case because, as the court read them, the records suggest that Edwards had exaggerated his symptoms, and in any case, show only that force was used, an element essentially uncontested by the defendants. Finally the court noted that Edwards was able to testify about his injuries, and, thus, had suffered no prejudice.

We agree that the proffered medical records would not have changed the outcome at trial because they do not rebut the officers' defense, which the jury accepted, that Edwards's resistance justified their use of force. Although the officers testified somewhat

euphemistically about the force they used (they "assisted" him to a kneeling position and "directed" him into the door), they did not contest that their force produced bruised ribs, sore wrists, or an injured head. The medical records would merely have confirmed those uncontested injuries. The officers disputed Edwards's claim that he complied with their orders to submit. But because the medical records would not have provided any material support for Edwards's contention that he was compliant, their exclusion was thus harmless.

Edwards also challenges the district court's decision to exclude evidence of the prison's administrative code. Edwards sought to admit specific code provisions regarding the permissible use of mechanical restraints and the prohibition against corporal punishment to show that the officers knowingly violated these rules. But the relevant issue at trial was whether, as a matter of the federal Constitution's ban on cruel and unusual punishment, the officers used force maliciously and sadistically and not for the purpose of restoring order. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The state code provisions were not relevant to this federal issue and therefore could have led to confusion of the relevant issues, a proposition that we have repeatedly affirmed within the context of excessive-force cases. *See Thompson v. City of Chicago*, 472 F.3d 444, 454-57 (7th Cir. 2006); *Scott v. Edinburg*, 346 F.3d 752, 760-61 (7th Cir. 2003).

Next, Edwards contends that the district court erred in refusing to answer the jury's questions and in refusing to instruct the jury on a theory of joint liability. The district court has broad discretion in responding to a juror's question, and we review a district court's answer to the question for abuse of discretion. *Deicher v. City of Evansville, Wis.*, 545 F.3d 537, 541 (7th Cir. 2008); *United States v. Watts*, 29 F.3d 287, 291 (7th Cir. 1994). The questions here all sought additional evidence not provided by either party, and answering the questions would have required the court to reopen the evidentiary portion of the trial. Both parties had already had a full opportunity to present evidence, and the district court's decision to direct the jury to consider the trial evidence was reasonable.

The court also properly rejected Edwards's proposed jury instruction regarding joint and several liability because the special verdict form sufficiently explained the applicable law that, if the jury found that any one of the defendants had used excessive force, the jury should determine the total amount of money necessary to compensate Edwards. *See Fox v. Hayes*, 600 F.3d 819, 843 (7th Cir. 2010); *Fillmore v. Page*, 358 F.3d 496, 507 (7th Cir. 2004). Edwards cites *Fillmore* as support for an instruction on joint liability, but there we explained that "joint liability is appropriate only where all of the defendants have committed the negligent or otherwise illegal act, and so only causation is at issue." *Fillmore*, 358 F.3d at 507. Here, the jury found no one liable, and given that verdict, Edwards does not explain

how the court's ruling prejudiced his case.  *See Fox*, 600 F.3d at 843; *Deicher*, 545 F.3d at 542-43.

Finally, Edwards argues that the district court should have recruited counsel to represent him.  Edwards asserts that the court did not inquire into his competence and ignored an affidavit of his fellow prisoner, James Schmeisser, when denying his motion for a new trial.  In the affidavit, which he submitted with his motion for a new trial, Schmeisser explained that he had been assisting Edwards throughout the case, but could no longer assist him.  He asserted that Edwards had been unable to litigate the case on his own because his incarceration made it difficult to investigate the relevant issues.

Before a district court may recruit pro bono counsel, *see* 28 U.S.C. § 1915(e)(1); *Mays v. Springborn*, 575 F.3d 643, 650-51 (7th Cir. 2009); *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (en banc), it must consider the difficulty of the case relative to the plaintiff's competence to litigate it himself, *Pruitt*, 53 F.3d at 649.  We review that assessment for an abuse of discretion in light of the information available to the district court at the time it made the decision, and we will reverse only upon a showing of prejudice.  *Id.* at 658-59.  Here, the Schmeisser affidavit was not before the district court when it denied Edwards's pretrial request for counsel, and therefore the district court did not abuse its discretion in not considering it.

In all other respects, too, the district court's decision was reasonable.  In his request for counsel, Edwards simply stated that he (like almost any pro se litigant) lacked trial experience and that counsel could better litigate issues of credibility and demonstrate how the restraints were used to prevent him from kneeling.  But under *Pruitt*, the relevant question is not whether a lawyer would be more effective; rather, it is whether the case's complexity exceeds Edwards's ability to present it to a jury coherently.  503 F.3d at 655.  And in his request for counsel, Edwards presented no reason to believe that he lacked the education and skill to make a coherent presentation of what the district court fairly saw as a relatively straightforward case.  Therefore, the district court reasonably concluded that Edwards was capable of presenting his side of the story—including describing and demonstrating how the restraints were applied—without the assistance of counsel.

Accordingly, we AFFIRM the judgment of the district court.