COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-07-282-CR

 

 

RUBEN WENGER V A/K/A REUBEN V. WENGER                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.      Introduction








Appellant Ruben Wenger appeals his conviction on
three counts of promotion of child pornography and four counts of possession of
child pornography as alleged in the same indictment.  Appellant argues that the evidence is legally
and factually insufficient to support his conviction on the promotion counts
and that the trial court abused its discretion in overruling his hearsay
objection and in admitting extraneous offense evidence of possession of child
pornography.  

II.     Factual and procedural
background













Sergeant Ried, an agent with the Attorney General=s Cyber
Crimes unit, testified that on November 28, 2005, he used file-sharing software
called Shareaza to access the Internet through a covert access point in his
office in Austin.  Shareaza is a
peer-to-peer[1]
file sharing software that allows a user to search for music, movies, and image
files and download them from other Shareaza users=
computers.  A Shareaza user can type
exactly what he or she is looking for via search terms, and a results list will
appear with download links for the user to choose from.  The software also allows a user to select
another user=s Internet protocol (AIP@)
address[2]
and browse all files available from that user=s
collection.  Downloads from Shareaza are
automatically placed in a AShared@ folder
created by the software on the user=s
computer.  By default, Shareaza
automatically shares the items downloaded with other Shareaza users.          For
his investigation, Sergeant Ried used a special search term popular in the
child pornography community and discovered several results.  Over Appellant=s
hearsay objection, the trial court allowed Sergeant Ried to testify that he
downloaded child pornography files from the IP address assigned to Appellant by
his Internet service provider.  He stated
that IP addresses are like telephone numbers, assigned to only one person.  Based on the child pornography[3]
Sergeant Ried downloaded from Appellant=s IP
address, he obtained a grand jury subpoena and a search warrant.  Police executed the warrant on Appellant=s
residence on February 8, 2006.  Sergeant
Ried retrieved a computer from the residence and took a statement from
Appellant=s wife.         During
trial, the State played an audio recording of a February 8, 2006 interview
between Sergeant Ried, Sergeant Smith, and Appellant while they were at the
Fort Worth police substation after the warrant was executed.  Sergeant Ried testified that, before taking
the statement, he read Appellant his Miranda[4]
rights and did not make any promises or threats regarding Appellant=s making
the statement.  In the recording,
Sergeant Ried read the Miranda rights, told Appellant that he was not
under arrest, and informed Appellant that he could ask to go home at any
time.  Appellant voluntarily waived his Miranda
rights and spoke with the officers.  

After waiving his Miranda rights,
Appellant confirmed that he was the primary user of both the computer and the
installed Shareaza software.  He claimed
that a neighborhood child used the computer occasionally, along with his son.  He stated that he formerly used the
file-sharing software Kazaa but switched to Shareaza.  He installed Shareaza and registered his
name, hometown, state, and zip code on the software=s user
information section.  He registered his
user name as AC.W.@ because
his nickname was Chip Wenger.  Appellant
stated initially that he had only movies and Astraight@
pornographic images on his computer.  He
denied having child pornography and stated that he did not know how it came to
be on his computer unless it was Aclicked
on accidentally.@ 
He stated that he A[tried] to view everything that
gets downloaded.@ 
Appellant admitted that he had searched for files containing the words Ayoung@ and ALolita,@ but
denied having used other search terms associated with child pornography.   








After Sergeant Ried confronted Appellant by
informing him that he had personally downloaded child pornography from
Appellant=s IP address, Appellant admitted
that the ages of the children in the videos on his computer were Avery
early teens@ and that the youngest child was
Aprobably
eight.@  Appellant described the video of the youngest
child and said that the video was in his AShared@
folder.  He explained that he was curious
about the visual material.  Appellant
denied finding the material sexually arousing, but compared his viewing of the
pornographic images and videos to the ATaliban
beheading [video],@ stating that Ayou=d watch
it even though you find it disgusting, but you are drawn to it.@  He admitted he knew it was illegal.   








When asked if he knew how many times he had Aallowed
people to upload those videos of child pornography from [his] computer,@
Appellant replied that he Ahad no
idea.@  When asked if he was Aaware
that [it was possible for] people [to] upload . . . [his] files,@
Appellant stated, AI=m
assuming that it is, . . . but I think it says that it isCthat=s part
of Shareaza is that [] . . . that=s your
way to use it is that people pull files from members.@  Appellant then claimed that he Adid not
know how to not share and share and separate those items out.@  He ultimately admitted that there were Aprobably
300@ videos
of child pornography on his computer. 
Appellant described some files as located in folders that had titles
such as Aextreme,@ Aamateur,@ Agroup,@ Atoy,@ and Ayoung.@  He explained that after he obtained the files
from Shareaza, he would create Asubfolders@ and
move the files.[5]    

The State offered into evidence the files that
Sergeant Ried downloaded from Appellant=s IP
address during his November investigation.[6]  Sergeant Ried stated that the files included
both videos and photo images of children under eighteen, including the children=s
genitalia and children engaging in sexual activity.  He testified that one can preview partially
downloaded files on Shareaza.   








While Sergeant Ried testified about the steps of
his investigative process on November 28, 2005, the State offered into evidence
an exhibit of Shareaza screen captures[7]
that showed a folder on a computer at Appellant=s IP
address with a list of labeled subfolders and 900 files that included file
names graphically describing both adult and child pornography.  After a rule 403 objection and lengthy voir
dire, the trial court overruled the objection and admitted the screen captures
into evidence.  The trial court gave
Appellant a running objection to that evidence.    

Detective Lawrence testified that he worked in
the Computer Crime Detail of the Major Crimes section of the Fort Worth Police
Department, where he investigated computer crimes and conducted computer
forensics.  He conducted a forensic
examination on Appellant=s computer after it was
seized.  He located the images alleged in
the indictment on Appellant=s
computer and testified that, in his opinion, those images constituted child
pornography.   

Detective Lawrence explained that Appellant had
stored his pornography under the AMy
Documents@ folder of a second hard drive,
D:.  He stated that the terms used in the
file names, such as Aage 6-3 (reelkiddymov child
abuse underage preteen r@ygold bond age rape molest).mpg,@ were
common to his child pornography investigations. 
He testified that one file was last accessed on February 7, 2006.  He also testified about the organization of
the files on the second hard drive and 
stated that they were Apretty
well organized.@ 
He stated that, in his opinion, Appellant=s
possession of the child pornography was not inadvertent, based on the
organizational structure of the files and the number of files on the computer.    








Detective Lawrence confirmed that he found on
Appellant=s computer all three of the
files Sergeant Ried had downloaded via Shareaza on November 28, 2005.  Detective Lawrence added that there were
other child pornography pictures found in several subfolders other than the Ayoung@
subfolder.  He also testified that unlike
the default Shareaza installation, where downloaded files are automatically
shared, Appellant=s computer had separate folders
for downloaded and shared files and that files had to be moved from the ADownload@ folder
to the AShared@ folder
to share the files in question.  He
demonstrated how a person could make changes to his or her sharing settings by
simply selecting AShareaza Settings.@   

Appellant was charged by indictment with
promotion of child pornography by disseminating visual material on counts one
through three of the indictment and possession of child pornography on counts
four through seven.  The jury returned a
verdict of guilty on all counts and assessed a punishment of fifteen years for
each promotion count and ten years for each possession count, with some of the
sentences consecutive and others concurrent.  


III.     Legal and factual sufficiency of the evidence for intentional
promotion by         dissemination

 








Appellant argues that there was insufficient
evidence to prove he actually and intentionally disseminated child pornography
or that he had specific knowledge that the material was child pornography prior
to dissemination because there was no proof that he saw the three files alleged
to have been shared or that he intended to share the same.    

a.      Legal
sufficiency: standard of review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App.
2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

b.     Factual
sufficiency: standard of review








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v.
State, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008); Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Lancon v. State, 253
S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, though legally sufficient, contradicts
the verdict.  Watson, 204 S.W.3d
at 417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s determinations,
Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon, 253 S.W.3d at 704.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).         c.      Applicable
law

The offense of promotion of child pornography is
described under penal code section 43.26(e), which provides that Aa person
commits an offense if: (1) the person knowingly or intentionally promotes or
possesses with intent to promote material described by Subsection (a)(1); and
(2) the person knows that the material depicts the child as described by
Subsection (a)(1).@ 
Tex. Penal Code ' 43.26(e) (Vernon 2003).  Section (a)(1) of the statute describes the
offense of possession of child pornography: A[a]
person commits an offense if: (1) the person knowingly or intentionally
possesses visual material that visually depicts a child younger than 18 years
of age at the time the image of the child was made who is engaging in sexual
conduct.  Id. '
43.26(a). 








The term Apromote,@ as
defined under section 43.25(a) of the penal code, means Ato
procure, manufacture, issue, sell, give, provide, lend, mail, deliver,
transfer, transmit, publish, distribute, circulate, disseminate, present,
exhibit, or advertise or to offer or agree to do any of the above.@  Id. ' 43.25(a)(5)
(Vernon 2007).  A person acts
intentionally, or with intent, with respect to the nature of his conduct or to
a result of his conduct when it is his conscious objective or desire to engage
in the conduct or cause the result.  Id.
' 6.03(a)
(Vernon 2003).  A person acts knowingly,
or with knowledge, with respect to the nature of his conduct or to
circumstances surrounding his conduct when he is aware of the nature of his
conduct or that the circumstances exist or when he is aware that his conduct is
reasonably certain to cause the result.  See
id. ' 6.03(b).  

Circumstantial evidence can be used to prove
intent and knowledge.  See Guevara v.
State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); Dillon v. State,
574 S.W.2d 92, 94 (Tex. Crim. App. 1978); Krause v. State, 243 S.W.3d
95, 111 (Tex. App.CHouston [1st Dist.] 2007, pet.
ref=d).  The trier of fact may infer intent and
knowledge from the acts, words, and conduct of the accused.  Guevara, 152 S.W.3d at 50; Dues v.
State, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982). 

d.     Analysis








Appellant challenges the sufficiency of the
evidence on three grounds.  Appellant
argues that the evidence is insufficient to prove  (1) that he actually disseminated the child pornography;
(2) if he disseminated the child pornography, that the dissemination was
intentional or knowing; and (3) that he knew the files in question contained
child pornography before Sergeant Ried downloaded them from his computer.  We will address each ground separately in our
analysis.  

1.     Actual dissemination

In the first part of his sufficiency challenge,
Appellant argues that the evidence is insufficient to prove that he actually Adisseminated@ child
pornography.  Implicit in his argument is
the question of whether sharing digital files through peer-to-peer software
like Shareaza constitutes Adissemination.@  Several
courts have held that making child pornography available for others to access
and download through peer-to-peer file-sharing software qualifies as Adistribution@ or Adelivery@ to
others.  See United States v.
Sewell, 513 F.3d 820, 822 (8th Cir.) (stating that, in the context of
file-sharing software Kazaa, Aplacing
a file in a shared folder with descriptive text is clearly an offer to
distribute the file@), cert. denied, 128 S.
Ct. 2517 (2008); United States v. Carani, 492 F.3d 867, 876 (7th Cir.
2007) (holding that making pornography available on file-sharing software
qualifies as Adistribution@), cert.
denied, 128 S. Ct. 932 (2008); United States v. Shaffer, 472 F.3d
1219, 1223 (10th Cir. 2007) (concluding that Shaffer distributed child
pornography in the sense of having Adelivered,@ Atransferred,@ Adispersed,@ or Adispensed@ it to
others via his computerized stash of images and videos within his Kazaa
file-sharing software). 








In United States v. Shaffer, the 10th
Circuit Court of Appeals analogized the making available of child pornography
through peer-to-peer file sharing software to a self-serve gas station.  See Shaffer, 472 F.3d at 1223.  At a self-serve station, while there may be a
roadside sign directing motorists to fill up their own tanks and the owner or
attendants may not be present at the station, there is Ano doubt
that the owner is in the business of distributing, transferring or dispersing
gasoline.@ 
Id. at 1223B24.  Much like the gas station owner, the
defendant in Shaffer Awelcomed
people to his computer and was happy to let them take child pornography from
it.@  Id. at 1224.  Thus, just as the owner of a self-serve gas
station Adistributes@
gasoline, one who shares files on a peer-to-peer network Adistributes@ those
files.  See id.








Shaffer and the other cases cited above
analyzed the term Adistribution,@ but in
the context of peer-to-peer file sharing, there is no significant difference
between Adistribution@ and Adissemination.@  ADistribute@ means,
among other things, to spread out; to scatter; to give or deliver, especially
to members of a group.  Webster=s Ninth
New Collegiate Dictionary 368 (1987). 
ADissemination@ means
to spread; to disperse throughout.  Id.
at 366.  Because the terms Adistribute@ and Adissemination@ have
similar meanings, the cases holding that peer-to-peer file sharing is Adistribution@
persuasively answer the  question of
whether the same activity constitutes Adissemination.@  Mindful that penal code section 43.25(a)
defines Apromote@ to mean
both Adistribute@ and Adisseminate,@ we hold
that making digital files available to others through peer-to-peer file sharing
software like Shareaza is Adissemination@ within
the meaning of section 43.25(a).

The jury heard ample evidence regarding Appellant=s
dissemination of the child pornography files to Sergeant Ried on November 28,
2005.  Sergeant Ried and Detective
Lawrence both testified about how their investigations resulted in finding
child pornography files stored in subfolders within Appellant=s AShared@ folder
on his computer.  Sergeant Ried explained
his process of searching for child pornography on Shareaza and described how he
retrieved the indicted files from Appellant=s
computer by downloading them to his computer in Austin.  Detective Lawrence confirmed that, in
February 2006, his forensic investigation revealed that Appellant=s seized
computer contained the same files and user-created subfolders discovered by
Sergeant Ried=s November investigation.  Thus, the evidence was legally and factually
sufficient to prove that Appellant actually disseminated child
pornography.  See Sewell,
513 F.3d at 822; Carani, 492 F.3d at 876; Shaffer, 472 F.3d
at 1223.    

2.     Intentional
or knowing dissemination








Next, Appellant argues that there was
insufficient evidence to prove he intentionally or knowingly disseminated the
files in question.  Appellant highlights
the testimony that under Shareaza=s default
settings, the program will share a user=s
downloaded files automatically.  Although
Detective Lawrence testified that Appellant had changed the default settings
sometime before the State seized his computer so that Appellant had to manually
move downloaded files from the Adownloads@ folder
to the AShared@ folder
before Shareaza would share them with other users, he was unable to testify
that Appellant had so modified the default settings before Detective Ried
downloaded the indicted files from Appellant=s
computer three months earlier.  And State=s
Exhibit 11Cthe screen captures Detective
Ried made when he downloaded the filesCindicates
that Appellant=s shared files were in the
default Adownloads@ folder,
not a separate AShared@
folder.  Thus, argues Appellant, there is
no evidence that he intentionally or knowingly disseminated child pornography
because Shareaza automatically shared his downloaded files with other users,
including Detective Ried.   








But other evidence tends to show that Appellant
intentionally or knowingly shared his downloaded files.  Most significantly, in his recorded
interview, Appellant admitted that he knew Shareaza shared his files: he said  that he assumed users downloaded files from
him and that the purpose of Shareaza was to allow users (like Detective Ried)
to Apull
files from members@ (like Appellant).  Although Appellant claimed in the interview
that he did not know Ahow to not share and share and
separate those items out,@ Detective Lawrence=s
testimony shows that Appellant did at some pointCbefore
the State seized his computer and before the interviewCchange
the default Shareaza settings so that the program did not automatically share
Appellant=s downloaded files.  This shows thatCcontrary
to his claim in the recorded interviewCAppellant
did know how to Anot share and share@
files.  Detective Lawrence also explained
why a Shareaza user like Appellant might want to share files, namely, because
Shareaza rewards a user for allowing others to download files from his
computers: A[T]he more files you share, the
faster you can download other files.@   

A jury could reasonably infer from this evidence
that Appellant knew Shareaza was sharing his downloaded files and knew how to
prevent Shareaza from sharing his downloaded files.  Thus, the evidence is legally and factually
sufficient to show that Appellant intentionally or knowingly disseminated the
indicted files despite his argument that Shareaza shared the files automatically
and without his knowledge or intent.

3.     Knowledge
of the actual content of files

Finally, Appellant argues that the evidence is
insufficient to show that he knew the files in question contained child
pornography when Sergeant Ried downloaded them. 
 








There is no direct evidence that Appellant viewed
the files in question before Sergeant Ried downloaded them from Appellant=s
computer; both Sergeant Ried and Detective Lawrence admitted that they had no
such proof. But Appellant said in his recorded interview that he Atried@ to view
everything he downloaded.  Sergeant Ried
testified that Shareaza allows a user to Apreview@ files
even before the download is complete. 
Appellant admitted that he searched for and downloaded child pornography
by inputting search terms like Ayoung@ and ALolita@ (he
denied that ALolita@ yielded
any Amatches,@ but one
of the indicted images has the term ALolita@ in its
file name).  He manually organized his
child-pornography collection in folders with names like Ayoung.@ It
appears from State=s Exhibit 11 that the Ayoung@ folder
existed on Appellant=s computer when Sergeant Ried
downloaded the indicted files, and Detective Lawrence testified that he found
those same files in the Ayoung@ folder
on Appellant=s computer. 








Most telling are the explicitly descriptive names
of the indicted files themselves, which included the terms Aage6-3,@ Akiddy@, Achild
abuse,@ Aunderage,@ Arape,@ Amolest@, Ap-e-d-o,@ ALolita,@ APTHC@
(Pre-Teen Hard Core), A8 9 10 11 12 yo,@ A6 year
old,@ and Ababy
incest.@  Detective Lawrence testified that he knew
what the files depicted from the file names alone before he viewed them.  There was testimony that descriptive file
names can be inaccurate or misleading, but in his recorded interview, Appellant
volunteered that sometimes, the names are accurate: A[I]t
says, >young
teens,= and you
pull it up, and it=s a 35-year-old woman . . . but
some of the stuff does come up that . . . is real.@  The record shows that the descriptive file
names of the indicted files were indeed accurate.  Finally, the record shows that Appellant
deliberately selected the descriptively-named files for downloading; as
Detective Ried explained, Shareaza does not randomly download files. 

From Appellant=s
admission that he Atried@ to view
everything he downloaded, from the fact that he organized the indicted files in
a folder labeled Ayoung,@ and
from the descriptive names of the files, a jury could reasonably infer that
Appellant knew the indicted files depicted child pornography when he  disseminated them to Sergeant Ried, despite
the lack of direct evidence that Appellant actually viewed the files=
contents before that date.  

e.      Conclusion








Viewing the evidence in a light most favorable to
the prosecution, a rational jury could have determined beyond a reasonable
doubt (1) that Appellant actually disseminated the images, (2) that he acted
intentionally and knowingly, and (3) that he knew that the computer images in
question depicted children under 18 years of age engaging in sexual conduct.  We hold that the evidence is legally
sufficient to support the jury=s
verdict.  See Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.

Viewing the evidence in a neutral light, we
cannot say that the evidence is so weak that the jury=s
determination that Appellant intentionally or knowingly disseminated child
pornography is clearly wrong or manifestly unjust.  We also cannot say that conflicting evidence
greatly outweighs evidence supporting conviction so that the jury=s
determination is manifestly unjust.  See
Lancon, 253 S.W.3d at 704; Watson, 204 S.W.3d at 414B15,
417.  We therefore hold that the evidence
is factually sufficient to support the jury=s
verdict, and we overrule Appellant=s first
point.  

IV.    Admission
of hearsay testimony 








In his second point, Appellant argues that the
testimony identifying his IP address and Internet service provider constituted
hearsay and should not have been admitted because it was an out-of-court
computer-stored statement offered for the truth of the matter asserted.  Appellant objected to Sergeant Ried=s
initial statements regarding the IP address but did not obtain a running
objection.  Further, toward the end of
Sergeant Ried=s testimony and when Detective
Lawrence testified, Appellant did not object when the State elicited additional
IP address testimony.  Sergeant Ried
confirmed without objection the existence of the IP address when describing
Exhibit 11 and testified that the address was assigned to Appellant.  Detective Lawrence recited the numbers in the
IP address without any objection and stated that it came from Appellant=s
computer and matched the submitted IP address from the Attorney General=s
office.   

To preserve a complaint for our review, a party
must have presented to the trial court a timely request, objection, or motion
that states the specific grounds for the desired ruling if they are not
apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Mosley v.
State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).  A
party must continue to object each time the objectionable evidence is
offered.  Fuentes v. State, 991
S.W.2d 267, 273 (Tex. Crim. App.), cert. denied, 528 U.S. 1026 (1999); Ethington
v. State, 819 S.W.2d 854, 858B59 (Tex.
Crim. App. 1991).  A trial court=s
erroneous admission of evidence will not require reversal when other such
evidence was received without objection, either before or after the
complained-of ruling.  Leday v. State,
983 S.W.2d 713, 718 (Tex. Crim. App. 1998); Johnson v. State, 803
S.W.2d 272, 291 (Tex. Crim. App. 1990), cert. denied, 501 U.S. 1259
(1991), overruled on other grounds by Heitman v. State, 815 S.W.2d 681
(Tex. Crim. App. 1991).  This rule
applies whether the other evidence was introduced by the defendant or the
State.  Leday, 983 S.W.2d at 718.








Because Appellant did not obtain a running
objection for his hearsay objection during Ried=s
testimony or specifically object to the IP address testimony elicited from
Detective Lawrence, he did not preserve error for our review.  Fuentes, 991 S.W.2d at 273.  We must therefore overrule Appellant=s second
point.  

V.     Evidence
of Extraneous Offenses 








In his third point, Appellant argues that the
trial court=s admission of the exhibit
showing a list of subfolders and 900 file names from his AShared@ folder
of Shareaza in addition to the files with which he was charged was improper
because it included both adult as well as child pornography, thus constituting
improper extraneous offense evidence that was unduly prejudicial under Texas
Rules of Evidence 403 and 404(b).  The
State argues that because Appellant admitted his guilt at punishment, he is
estopped from raising this point unless he can show that admission of this
evidence implicated a fundamental right.[8]  Because we hold the evidence was admissible
and not unduly prejudicial, we need not address this contention.

We review a trial court=s
evidentiary ruling for abuse of discretion. 
Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).  A trial court abuses its discretion only when
the decision lies outside the zone of reasonable disagreement.  Green v. State, 934 S.W.2d 92, 101B02 (Tex.
Crim. App. 1996), cert denied, 520 U.S. 1200 (1997).  The trial court has wide latitude to admit or
exclude evidence of extraneous offenses. Montgomery, 810 S.W.2d at 390;
Sanders v. State, 255 S.W.3d 754, 760 (Tex. App.CFort
Worth 2008, pet. ref=d.).  We give great discretion to the trial court
in matters of admissibility of evidence if correct under any theory of law, even
if the trial court=s underlying reason was wrong.  See Romero v. State, 800 S.W.2d 539, 543B45 (Tex.
Crim. App. 1990).  








Texas Rule of Evidence 404(b) prohibits admission
of evidence of extraneous offenses to prove that, on the occasion in question,
the defendant acted in conformity with the character shown by other bad acts.  Tex. R. Evid. 404(b); see Santellan v.
State, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997); Jones v. State,
119 S.W.3d 412, 418 (Tex. App.CFort
Worth 2003, no pet.).  However, evidence
offered to prove motive, opportunity, intent, preparation, plan, knowledge,
intent, or absence of mistake or accident is not barred by Rule 404(b).  Santellan, 939 S.W.2d at 168.  When the defendant objects under Rule 404(b),
the State must satisfy the trial court that the extraneous offense has
relevance apart from its character-conformity value.  See Rankin v. State, 974 S.W.2d 707,
718 (Tex. Crim. App. 1998) (op. on reh=g); Montgomery,
810 S.W.2d at 387. 

An extraneous offense has noncharacter-conformity
relevance when it has any tendency to make the existence of a fact that is of
consequence to the determination of the action more or less probable than it
would be without the evidence.  See
Tex. R. Evid. 401; Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App.
2001).  Extraneous offense evidence that
tends to rebut a defensive theory is relevant beyond its character-conformity
value.  Bass v. State, 270 S.W.3d
557, 563 (Tex. Crim. App. 2008); Montgomery, 810 S.W.2d at 386B87; Jones,
119 S.W.3d at 419.  The State argues
that the trial court did not abuse its discretion in admitting the list of
subfolders and file names because it was admissible to rebut Appellant=s
defensive theory, to show his knowledge and intent to possess and promote the
indicted images and his plan to store and share those images, and to show that
his possession and promotion of those images was not a result of accident or
mistake.  








Appellant=s
defensive theory that he sought to develop on cross-examination of the officers
was that, if any child pornography was downloaded onto his computer, it must
have been accidental, and that it may have been shared with others before he
viewed the content and without his knowledge. 
On cross-examination of Sergeant Ried, Appellant created an impression
that he had only one file available for downloading and that that file could
have been downloaded by others and Ashared@ before
he became aware of it.  The State=s
exhibit showing an extensive list of subfolders and file names tended to show
that Appellant was experienced in searching for both child and adult
pornography, that he had numerous files of both kinds available for sharing,
and that he organized his pornography collection by type of image, including
creating a special subfolder entitled Ayoung.@  His creationCor
retentionCof the highly descriptive as
well as offensive and lurid file names, along with their organization, not only
made them easily searchable by other users but was also relevant to show that
he was aware of the illegal nature of his conduct and that the presence of the
indicted images on his computer was not accidental.  The evidence was relevant to the issues of
motive, intent, plan, knowledge, and lack of mistake or accident.  We agree with the State that the exhibit had
relevance apart from evidence of character-conformity.  See Tex. R. Evid. 404(b). 








Evidence relevant under Rule 404(b) may
nevertheless be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or misleading the jury
or by undue delay or needless presentation of cumulative evidence.  Tex. R. Evid. 403.  AProbative
value@ refers
to the inherent probative force of an item of evidenceCthat is,
how strongly it serves to make more or less probable the existence of a fact of
consequence to the litigationCcoupled
with the proponent=s need for that evidence.  Gigliobianco v. State, 210 S.W.3d 637,
641 (Tex. Crim. App. 2006).  AUnfair
prejudice@ refers to a tendency to suggest
a decision on an improper basis, commonly although not necessarily an emotional
one.  Id.  Only unfair prejudice provides the
basis for exclusion of relevant evidence. 
Montgomery, 810 S.W.2d at 389.








The relevant criteria in performing a rule 403
balancing test include (1) the inherent probative force of the proffered item
of evidence along with (2) the proponent=s need
for that evidence, balanced against (3) any tendency of the evidence to suggest
conviction on an improper basis, (4) any tendency of the evidence to confuse or
distract the jury from the main issues, (5) any tendency of the evidence to be
given undue weight by a jury that is not equipped to evaluate the probative
force of the evidence, and (6) the liklihood that presentation of the evidence
will consume an inordinate amount of time or merely repeat evidence already
admitted.  Gigliobianco, 210
S.W.3d at 641B42.

We presume that the probative value substantially
outweighs the danger of unfair prejudice. 
Montgomery, 810 S.W.2d at 389. 
It is therefore the defendant=s burden
to demonstrate that the danger of unfair prejudice substantially outweighs the
probative value.  Hinojosa v. State,
995 S.W.2d 955, 958 (Tex. App.CHouston
[14th Dist.] 1999, no pet.); Poole v. State, 974 S.W.2d 892, 897 (Tex.
App.CAustin
1998, pet. ref=d).  It is not incumbent on the trial court to
perform the balancing test on the record. 
Yates v. State, 941 S.W.2d 357, 367 (Tex. App.CWaco 1997,
pet. ref=d).  In reviewing the trial court=s
balancing test determination, we are to reverse the trial court=s
judgment Ararely and only after a clear
abuse of discretion.@ 
Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). 








As discussed above, the first two factors weigh
in favor of admitting the extraneous offense evidence.  The evidence was probative to rebut Appellant=s
defensive theory that he did not intentionally or knowingly possess or promote
the indicted images; many of the images listed in the State=s
exhibit 11, like the indicted images, contain labels including terms such as Ateen,@ Achild,@ and Akiddy@ and
make it more likely that he was fully aware of the specific nature of the
material that he downloaded.  The
evidence was needed by the State to show that Appellant organized, stored, and
shared the downloaded images as described by their titles and that his doing so
was not the result of mistake or accident. 

The third, fourth, and fifth criteria of the
balancing test do not weigh heavily in favor of exclusion.  In contrast to the items with which Appellant
was charged with possessing and promoting, the exhibit of which he complains
consists only of a list of written titles; the corresponding images were never
shown to the jury.  Hence, the exhibit
did not have a definite tendency to suggest a decision on an improper basis, to
unduly confuse or distract the jury from the main issues regarding the indicted
images, or to invite the jury to give undue weight to that evidence.  Moreover, presentation of the evidence did
not consume an inordinate amount of time nor merely repeat evidence already
admitted.  








Appellant complains of the offensive and
repulsive nature of the titles shown and points to testimony that some of the
titles may have been misleading or incorrect, but he acknowledges that many, if
not most, were Areal.@  Moreover, there was evidence that he selected
the descriptively-titled files for downloading. 
Thus, we agree with the State that the exhibit listing the titles was
the best and least prejudicial method of rebutting Appellant=s
defensive theory that he may have downloaded images of child pornography
accidentally or shared them without knowledge of their content. 

Additionally, we note that the jury charge
contains a proper reasonable doubt instruction. 
The jury was instructed not to consider evidence of Appellant=s
commission of any crimes, wrongs, or acts other than the offenses alleged in
the indictment unless it found such commission beyond a reasonable doubt.  We hold that the trial court did not abuse
its discretion in admitting the State=s
exhibit because the probative value of that evidence was not substantially
outweighed by the danger of undue prejudice. 
We overrule Appellant=s third
point.

VII.   Conclusion

Having overruled Appellant=s three
points, we affirm the trial court=s
judgment.  

 

 

ANNE
GARDNER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

 

PUBLISH

 

DELIVERED:  June 25, 2009











[1]Sergeant Ried defined Apeer-to-peer@ in this context as a Acomputer to computer
connection,@ and as Detective
Lawrence later explained, there is Ano central location@; rather, a file is Ashared amongst all the
computers hooked up to the network at that time.@





[2]An IP address is a unique
32-bit-long code number that each computer acquires automatically through its
Internet access provider for connecting to the Internet. 
http://www.businessdictionary.com/definition/IP-address.html (last
visited June 17, 2009).





[3]Sergeant Ried downloaded
three files from Appellant=s IP address: one file containing actual sexual
intercourse, one file containing actual lewd exhibition of female genitals, and
one file containing actual sexual conduct.





[4]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct.
1602 (1966); see Tex. Code Crim. Proc. Ann. art. 38.22, '2 (Vernon 2005).





[5]Officers did not arrest
Appellant at the time of the statement; they arrested him four months later in
June 2006.





[6]Exhibit 7 was a digital
video with the file name Aage6-3 (reelkiddymov child
abuse underage pre-teen kiddy r@ygold bond age rape molest).mpg.@  Exhibit 8 was also a video, and its file name
was A2_p-e-d-o lolita R@ygold
PTHC incest 8 9 10 11 12 yo collection 053 (50).jpg.@  Exhibit 9 was a photograph, and its file name
was A6 year old girl_finger in
pussy_preteen child underage pedo P-E-D-O baby incest
reelkiddymov(1)(1)(1)(1).jpg.@





[7]Also called a Ascreen shot,@ a screen capture is a
reproduction of the current display on a computer screen, saved as a graphics
file.  See Dictionary.com,
http://dictionary.reference.com/browse/screen%20shot (last visited June 17,
2009).





[8]See Leday, 983 S.W.2d at 724
(limiting the doctrine announced in DeGarmo v. State, 691 S.W.2d 657,
661 (Tex. Crim. App.), cert. denied, 474 U.S. 973 (1985)), and holding
that when an appellant admitted his guilt at punishment, appellate court must
determine if appellant asserts fundamental rights or guarantiesCwhich he cannot be
estopped from assertingCor whether the
truth-finding function prevails to estop him from asserting nonfundamental
complaints).