In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-2007

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FABIO CARANI,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 150—**John F. Grady**, *Judge.*

---

ARGUED APRIL 9, 2007—DECIDED JULY 6, 2007

---

Before EASTERBROOK, *Chief Judge*, and KANNE and WILLIAMS, *Circuit Judges*.

KANNE, *Circuit Judge.* Fabio Carani was charged with one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), and two counts of knowingly receiving child pornography in the form of certain computer files in violation of 18 U.S.C. § 2252A(a)(2)(A). A jury found Carani guilty of possession, but returned a verdict of not guilty as to one of the receipt counts, and was unable to reach a unanimous decision as to the other receipt count. The district court sentenced Carani to seventy-two months' imprisonment. Carani appeals both his conviction and sentence. Finding no error, we affirm.

## I.  BACKGROUND

Carani is an Italian immigrant who moved to the United States in 1972. He, along with his wife Natza, owned a computer. On this computer, Carani used a program called Kazaa Lite ("Kazaa").

Kazaa is a peer-to-peer file sharing program through which users may download files (music, videos, text, etc.) from the computers of other Kazaa users. Users search for files using search terms as they would in a web browser. Kazaa returns a list of available files that fit the users' search criteria. Users may gain more information about the files by hovering over the file name with the computer cursor. These files are located on the computers of other Kazaa users, not on the Internet at large. The purpose of Kazaa is to allow its users to share such files with each other. When files are completely downloaded or shared through Kazaa, a record of that activity is logged on the user's computer in a database located in what we will call the ".db folder."

Files that are downloaded using Kazaa are placed, by default, in the user's "My Shared Folder." If a user does not wish to allow other users to access his files, he may change his Kazaa settings so that he may download files from others' computers, but they may not download files from his computer. In order to encourage users to share their files, Kazaa employs a participation level system. Participation levels range from 0 to 1,000, and increase with the number of files the user shares. When multiple users attempt to download the same file, they are placed in a queue. Users with higher participation levels are given priority over those with lower participation levels. Thus, a user who shares his files with others will be able to more quickly and easily download the files that he wants from other Kazaa users.

In February 2005, agents in the Cyber Crimes Unit of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), obtained a warrant to search Carani's residence. During the search, Senior Special Agent Jason Varda found Carani's computer. It was powered on, connected to the Internet, and running Kazaa at the time. Through Kazaa, Carani's computer was actively downloading files from other Kazaa users, and allowing other Kazaa users to download files on Carani's computer. Agent Varda photographed the screen, which showed that another user was attempting to download a file by the name "incest porn, a little girl has sex with an adult guy." The lower right of the computer screen indicated: "Connected as default user at Kazaa, sharing 214 files."

After photographing the computer screen, Agent Varda disconnected the computer from its power supply. He removed the hard drive and connected it to a write-blocking device to ensure that no data entered the hard drive. Agent Varda then used a software program called EnCase to preview all of the files on the hard drive, including those that had been deleted. The preview revealed a number of suspected child pornography videos.

Agents interviewed Natza during the search. Natza indicated that she and Carani had watched videos of child pornography—sometimes in their entirety—on their computer and then deleted them. Meanwhile, Carani agreed to accompany agents to the Highland Park police department. At the station, he was advised of his constitutional rights orally and in writing, and he agreed to be interviewed. Initially, Carani told the agents that he had come across child pornography while searching for adult pornography and had seen it about ten times. He said that when this happened, he would watch the video and then delete it, and that he had never saved any child pornography on his computer. Later, Carani said

that he had seen "tons" of child pornography, and that he may have had one video saved.

The agents took a break from the interview to consult with the United States Attorney's Office. When they returned, Carani admitted that he had not been entirely forthcoming with them. Carani said that he used terms such as "pedo" and "r@ygold" to search Kazaa specifically for child pornography. Agents testified at trial that both of these terms are related to child pornography. Carani also told the agents that the saved video that he had mentioned before the break was titled "Segundo." Carani further indicated that he was particularly interested in videos involving family incest. He stated that he was no longer aroused by adult pornography, and had last viewed child pornography between two weeks and one month prior to the interview. He told the agents that he had never intentionally distributed child pornography, but that he may have done so inadvertently through the Kazaa program as he did not understand what the "My Shared Folder" did.

Carani then prepared the following written statement:

> I have viewed child pornography in the past and then deleted it. I have only one saved right now in the saved section, which is "My Kazaa Lite." As far as computers are concerned I am a beginner at best. I did not distribute any of these videos on purpose, and I have no explanation as to how these videos were shared, but I never shared anything. I don[']t even know how to do so. The only explanation is that, as I viewed them and deleted them, they were automatically shared without my knowing of it. Some of these videos I stumbled upon by accident downloading other videos, and through [curiosity] I looked up some child pornography and again deleted it when I saw it. but the more I saw

> the more I felt that it was wrong to do so. My intentions were never to hurt anybody and forgive my ignorance but I did not know that this was against the law via the way it was done (through Kazaa Lite). I feel extremely bad about what happened, but I can say that I learned a lot through this experience.

Carani's hard drive was sent to Agent Skinner, an ICE forensic analyst with the Cyber Crimes Center in Fairfax, Virginia. Agent Skinner made further use of the EnCase software to analyze the contents of Carani's hard drive. Agent Skinner testified that he initially found two child pornography files in Carani's temporary Internet folders, both "BabyJ Sunshine" files, which he determined had been accessed through a web browser. Agent Skinner used EnCase to search for "BabyJ" references. His search turned up a number of such references, including references to the Kazaa My Shared Folder, and the term "pedophilia." Agent Skinner then constructed a search using a variety of terms associated with child pornography: pedophilia, young Lolita, kiddie, preteen, kindersex, pedo, BabyJ, Baby J, pedo video, illegal pedophilia, r@ygold, underage, incest, Lolita, kiddie porn, real kiddie, kinder, and child lover. This search of the hard drive returned a large number of separate and distinct hits, including 3,050 hits for "kiddie," 2,011 hits for "preteen," 3,603 hits for "pedo," 1,799 hits for "r@ygold," and 3,720 hits for "Lolita." Agent Skinner concluded that Carani was actively seeking out child pornography, as a home computer would not otherwise contain so many references to terms associated with child pornography. Agent Skinner also located numerous files in both the My Shared Folder and the .db folder whose names were suggestive of child pornography. Agent Skinner testified that when a user downloads a file from Kazaa, he is able to view the file name, and when he hovers over the file name, he can see a file description and keywords. Additionally, the Kazaa

screen contains a display which notifies the user that another person is downloading a file from his computer, and indicates which file.

Agent Skinner also testified regarding Carani's Kazaa participation level. Carani's participation level was 771, out of a possible 1,000. Agent Skinner determined that Carani's high participation level was the result of a "hack"—an unauthorized technique which caused Carani's computer to download files from itself, and artificially boost his participation level. Use of the hack required action on the part of the computer user, and there was evidence that the hack had been used extensively. Agent Skinner further testified that Carani's computer and Kazaa program functioned properly.

Carani called Scott Ellis, a computer business consultant, to testify as an expert on his behalf. Ellis testified that Carani was not a sophisticated computer user, and did not know how to use his My Shared Folder on Kazaa. He also testified that a virus, worm, remotely located pedophile, or software glitches could have caused the references to child pornography found on the computer. Ellis described Kazaa as "a piece of rogue software" that "can behave in an uncontrolled fashion." R. 131, p. 464.

Natza and Carani both testified at trial. Each denied making statements to agents that they had watched child pornography, and explained that they only saw child pornography when they mistakenly came across it while searching for adult pornography. They explained that they downloaded video files in large blocks, then reviewed it and discarded the child pornography that they came across. They also emphasized that they were computer novices, and did not fully understand the Kazaa program.

In rebuttal, Agent Skinner testified that his analysis showed that child pornography videos were not down-

loaded in large chunks along with adult pornography; rather, they were downloaded along with other child pornography, in groups of five or six. Agent Skinner also refuted Ellis's testimony that the Kazaa program was not running properly on Carani's computer.

When it came time to instruct the jury, the court used the Seventh Circuit's pattern instructions to define knowingly: "When the word 'knowingly' is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake, or accident." 7th Cir. Pattern Jury Inst. 4.06. The court also included an instruction on deliberate avoidance, also known as an "ostrich instruction": "You may infer knowledge from a combination of suspicion and indifference to the truth." *Id.* This instruction included an example relevant to this case: "If you find that the defendant had a strong suspicion that a file was child pornography, but ignored that suspicion and downloaded the file, you may conclude that he acted knowingly, as I have used that word." The district court also instructed the jury on the meaning of possession: "In the context of this case, possession means intentionally retaining child pornography after downloading it."

After the jury began deliberations, they sent the following question to the district court: "Does downloading, watching, & deleting constitute possession?" The district court replied: "The answer to this question depends upon whether, at the time he downloaded material, the defendant knew or strongly suspected that it was child pornography and downloaded it anyway. If you find beyond a reasonable doubt that he did, then the answer to your question is 'yes.' If you have a reasonable doubt as to whether the defendant knew or strongly suspected that the material was child pornography at the time he downloaded it, then the answer to your question is 'no.'"

The jury found Carani guilty of possession, but returned a verdict of not guilty as to one of the receipt counts, and was unable to reach a unanimous decision as to the other receipt count.

At the sentencing hearing, the district court heard arguments from both sides. Carani's counsel reiterated his arguments that Carani was not a sophisticated computer user, and that he only downloaded child pornography inadvertently. In support of a distribution enhancement, the government argued that Carani received a "thing of value" as required by the Sentencing Guidelines, by increasing his participation level, which improved his accessibility to other users' files, and that Carani's actions constituted "active trading" in contraband materials. *See* U.S.S.G. § 2G2.2(b)(3)(B).

The district court found that "[t]he defendant's position in regard to whether he knew he possessed child pornography is simply counter to the credible evidence produced at trial, and therefore I do find that the defendant knowingly obtained child pornography on his computer . . . . And turning now to the first guideline issue to which that finding pertains, I do find that the defendant knowingly distributed child pornography in that he knowingly made his child pornography on his computer available to other Kazaa users, who downloaded it from his computer." Mar. 16, 2006 Tr. 38-39. The district court imposed a two-level sentencing enhancement for distribution under U.S.S.G. § 2G2.2(b)(3)(F). The district court added: "A subsidiary finding implied in what I have just said is that the defendant was perfectly aware of the shared files folder. He knew what was in it, he accessed it, and his denial that he knew what was in there is simply not credible." Mar. 16, 2006 Tr. 39. The district court sentenced Carani to 72 months' imprisonment and two years of supervised release.

## II. ANALYSIS

This appeal presents three issues: (1) whether the district court abused its discretion by giving the deliberate avoidance "ostrich" instruction to the jury; (2) whether the district court's response to a jury question was in error; and (3) whether the district court improperly applied a sentencing enhancement for the distribution of child pornography.

### A. Ostrich Instruction

We review the district court's decision to give an ostrich instruction for an abuse of discretion, viewing all evidence in the light most favorable to the government. *United States v. Leahy*, 464 F.3d 773, 796 (7th Cir. 2006); *United States v. Carrillo*, 435 F.3d 767, 780 (7th Cir. 2006) (citing *United States v. Fallon*, 348 F.3d 248, 253 (7th Cir. 2003)).

An ostrich instruction is appropriate where (1) the defendant claims a lack of guilty knowledge, and (2) the government has presented evidence sufficient for a jury to conclude that the defendant deliberately avoided learning the truth. *Carrillo*, 435 F.3d at 780. Deliberate avoidance is more than mere negligence, the defendant must have "deliberately avoided acquiring knowledge of the crime being committed by cutting off his curiosity through an effort of the will." *Leahy*, 464 F.3d at 796 (citing *Fallon*, 348 F.3d at 253). Deliberate avoidance is not a standard less than knowledge; it is simply another way that knowledge may be proven. *Carrillo*, 435 F.3d at 780 (citing *United States v. Ramsey*, 785 F.2d 184, 189 (7th Cir. 1986)). "The purpose of the ostrich instruction 'is to inform the jury that a person may not escape criminal liability by pleading ignorance if he knows or strongly suspects he is involved in criminal dealings but deliberately avoids learning more exact information about the

nature or extent of those dealings.'" *Carrillo*, 435 F.3d at 780 (quoting *United States v. Craig*, 178 F.3d 891, 896 (7th Cir. 1999); *United States v. Rodriguez*, 929 F.2d 1224, 1227 (7th Cir. 1991)).

Physical acts and outward expressions by the defendant evidencing his deliberate avoidance, while useful, are not necessary for a jury to infer that the defendant was curious but deliberately ignored his suspicions. *Carrillo* 435 F.3d at 780-81 (explaining the difference between avoidance through "overt physical acts" and "purely psychological" avoidance). The circumstances surrounding the defendant may be sufficient to infer that, given what the defendant knew, he must have forced his suspicions aside and deliberately avoided confirming for himself that he was engaged in criminal activity. *Id.* at 781 (citing *United States v. Carrillo*, 269 F.3d 761, 769-70 (7th Cir. 2001); *United States v. Farouil*, 124 F.3d 838, 844 (7th Cir. 1997); *United States v. Stone*, 987 F.2d 469, 472 (7th Cir. 1993); *Rodriguez*, 929 F.2d at 1227-28; *United States v. Caliendo*, 910 F.2d 429, 434 (7th Cir. 1990); *United States v. Josefik*, 753 F.2d 585, 589 (7th Cir. 1985); *United States v. Burns*, 683 F.2d 1056, 1060 (7th Cir. 1982)).

The crux of Carani's argument at trial was that any child pornography videos he may have downloaded to his computer were downloaded solely through inadvertence. In addition to direct evidence that Carani in fact intended to download child pornography, such as statements he made to agents at the Highland Park Police Station, the government also presented evidence from which a jury could infer that Carani deliberately avoided confirming that certain files were in fact child pornography. Government witnesses testified that many files that were, or had once been, on Carani's computer had words associated with child pornography in the file names. Those file names, in addition to file descriptions and keyword

listings, would have been displayed in the Kazaa search listings when Carani downloaded them. These words indicating that the files contained child pornography were, quite literally, right in front of his face. Thousands upon thousands of references to child pornography were found on Carani's computer; and evidence, such as the hack used to boost his participation level, suggests that Carani was not so bungling a computer user as he suggested.

The government presented evidence sufficient for the jury to infer that Carani suspected that files he was downloading and sharing with others contained child pornography, but deliberately pushed those suspicions aside in order to avoid confirming his criminal activities. The district court did not abuse its discretion by giving the ostrich instruction to the jury.

### B. Response to Jury Question

"We review a decision to answer a question from the jury as well as the language used in the response for an abuse of discretion." *United States v. Hewlett*, 453 F.3d 876, 880 (7th Cir. 2006) (citing *United States v. Young*, 316 F.3d 649 (7th Cir. 2002)). "[T]he district court retains broad discretion in deciding how to respond to a question propounded from the jury and . . . the court has an obligation to dispel any confusion quickly and with concrete accuracy." *United States v. Sims*, 329 F.3d 937, 943 (7th Cir. 2003). When reviewing the language of a supplemental jury instruction, we consider three factors: "(1) whether the instructions as a whole fairly and adequately treat the issues; (2) whether the supplemental instruction is a correct statement of the law; and (3) whether the district court answered the jury's questions specifically." *United States v. Danford*, 435 F.3d 682, 688 (7th Cir. 2006) (citing *Sims*, 329 F.3d at 943; *Young*, 316 F.3d at 662). An error in a supplemental instruction is only reversible if the

defendant has been prejudiced. *See Young*, 316 F.3d at 662.

Carani argues that, in answering the jury's question about possession, the district court impermissibly lowered the burden of proof with respect to knowledge by including the language, "knew or strongly suspected." Given the jury's confusion on such a critical aspect of the instructions, the district court was within its discretion to provide the jury with an answer. *See Sims*, 329 F.3d at 943.

Having concluded that the district court did not abuse its discretion by providing a supplemental instruction, we must next evaluate the language used in that instruction under the three factor rubric. *See Danford*, 435 F.3d at 688. The first and third factors are easily satisfied. The district court provided a thorough explanation that was specifically targeted at the jury's question regarding whether the defendant "possessed" child pornography if he discarded it after he watched it. The second factor, whether the instruction accurately stated the law, deserves more discussion.

The district court's supplemental instruction indicated that Carani could only be guilty of possession if, "at the time he downloaded material, the defendant knew or strongly suspected that it was child pornography and downloaded it anyway." This definition of possession is surely too narrow.

Suppose that, unbeknownst to an individual, a stranger on the street mistakenly slips a bag of marijuana into his pocket. Moments later, he is arrested on an outstanding warrant and the officer discovers the marijuana. He is not guilty of the possession of marijuana, because he does not have the requisite knowledge. But, suppose that before he is arrested on the outstanding warrant, he discovers the marijuana and decides to keep it. Then,

despite the fact that he did not know about the marijuana at the time that it was put in his pocket, he would have all of the knowledge required to be guilty of possession. *United States v. Myers*, 355 F.3d 1040, 1042 (7th Cir. 2004); *see United States v. X-Citement Video, Inc.*, 513 U.S. 64, 76-78 (1994); *United States v. Hall*, 142 F.3d 988, 997 (7th Cir. 1998) (explaining that if a defendant had the opportunity to delete child pornography files on his computer but chose not to, the requirements of possession have been met).

It is this second scenario that the district court's instructions did not take into account. A possessor of child pornography videos need not know that it is such at the time of download, so long as he discovers that it is child pornography after the download and decides to keep it anyway. The district court's instruction on possession crafted too narrow a definition of possession by requiring knowledge at the time of download.

Thus, the instruction could not have harmed Carani. If anything, Carani benefitted from giving it. In effect, the jury was told not to find Carani guilty of possession if he inadvertently acquired child pornography and subsequently made a conscious decision to keep it. The error in the supplemental instruction was harmless to Carani. Additionally, the use of the term "strongly suspected" in the supplemental instruction was proper given our analysis of the ostrich instruction.

## C. Distribution Enhancement

"We review the district court's interpretation and application of the Sentencing Guidelines *de novo*, and its findings of fact for clear error." *United States v. Fife*, 471 F.3d 750, 752 (7th Cir. 2006) (citing *United States v. Ellis*, 440 F.3d 434, 436 (7th Cir. 2006)). "A finding of fact is

clearly erroneous only if, based upon the entire record, we are left with the definite and firm conviction that a mistake has been committed." *United States v. Chamness*, 435 F.3d 724, 726 (7th Cir. 2006) (citations and quotations omitted).

Under U.S.S.G. § 2G2.2(a)(1), the base offense level for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5) is eighteen. The government requested a five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B) for the "[d]istribution [of child pornography] for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." The district court, instead, applied a two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F) for "[d]istribution other than distribution described in subdivisions (A) through (E)." The district court applied a number of other enhancements that Carani does not take issue with, bringing his total offense level to thirty-five. This yields an advisory guidelines range of 168-210 months. The statutory maximum, however, is ten years (120 months). 18 U.S.C. § 2252A(b)(2). Thus, the guidelines provide for a sentence of 120 months. After considering the sentencing factors in 18 U.S.C. § 3553(a), the district court sentenced Carani to seventy-two months' imprisonment followed by two years' supervised release.

Carani makes two arguments with respect to the distribution enhancement: (1) that there was insufficient evidence that he distributed child pornography; and (2) that if he distributed child pornography, he did not do so for the receipt of a thing of value.

This court has not previously considered the exact contours of what constitutes "distribution" in the context of the Kazaa peer-to-peer file sharing program. The Tenth Circuit, however, recently held that allowing others to access one's files through Kazaa is distribution. *United States v. Shaffer*, 472 F.3d 1219 (10th Cir. 2007). The

appellant in *Shaffer*, who was convicted of distributing child pornography, argued that knowing that others were accessing and downloading the files on his computer through Kazaa did not amount to distribution. *Id.* at 1223. Rather, he argued, an affirmative act must be taken by the distributor for each file at the time of distribution. *Id.* The Tenth Circuit rejected this argument, likening distribution through Kazaa to the operation of a self-serve gas station: "The owner may not be present at the station, and there may be no attendant present at all. And neither the owner nor his or her agents may ever pump gas. But the owner has a roadside sign letting all passerby know that, if they choose, they can stop and fill their cars for themselves, paying at the pump by credit card." *Id.* at 1223-24.

The notion that Carani could knowingly make his child pornography available for others to access and download without this qualifying as "distribution" does not square with the plain meaning of the word. Indeed, this court rejected a similar argument in *United States v. Gunderson*, where the defendant had programmed his computer to allow others to access his files if they first uploaded files to his computer. 345 F.3d 471, 473 (7th Cir. 2003). Once the program was written, it required no action by Gunderson to allow others to download his files. *Id.* We described the passive nature of the program as "irrelevant" to whether a distribution enhancement was appropriate. *Id.* Such is the case here. The district court specifically found that Carani made his child pornography videos available through Kazaa, and that he knew other users were downloading these files from him. This finding was not clearly erroneous.

Carani's second argument, that the distribution enhancement was not appropriate because he did not receive a thing of value in return, misstates the record and is a nonstarter. At sentencing, the government argued for a five-

level enhancement under U.S.S.G. § 2G2.2(b)(3)(B), which would require that Carani received something of value in return for the child pornography that he distributed. In his opening brief, Carani states: "The court erred by applying the five-level sentencing enhancement under U.S.S.G. § 2G2.2(b)(3)(B)." The record clearly shows that the district court made no such enhancement. The district court applied a two-point enhancement under U.S.S.G. § 2G2.2(b)(3)(F), which does not require that Carani received anything in return for the child pornography he distributed. Thus, there is no factual basis for this argument.

## III. CONCLUSION

For the foregoing reasons, Fabio Carani's conviction and sentence are AFFIRMED.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*