In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3096

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID PIEROTTI,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 13-CR-42 — **Lynn Adelman**, *Judge.*

ARGUED SEPTEMBER 22, 2014 — DECIDED FEBRUARY 3, 2015

Before WOOD, *Chief Judge*, and EASTERBROOK and SYKES,
*Circuit Judges.*

WOOD, *Chief Judge*. A few weeks before the start of the
2012 deer-hunting season in Wisconsin, David Pierotti de-
cided to buy a .243-caliber Remington rifle at his local
Walmart. There, a clerk asked him to sit down at a computer
to fill out an electronic version of ATF form 4473, a required
step in the firearm-purchase process. The form poses a series
of questions for any potential gun buyer, including one that

asks whether the purchaser has ever been convicted of a misdemeanor crime of domestic violence. Pierotti's initial response to this question was "Yes," which was correct; in 2011, he was convicted in Wisconsin of misdemeanor battery against his then-fiancée. When Pierotti clicked on a button to submit his completed form, however, a window popped up advising him to review his answers. He then changed his response to only one question—the one about domestic-violence misdemeanors—and submitted the form again. He did not seek further information before reviewing his answer, even though he could have done so by clicking on a link providing instructions for this question. Had he clicked, he would have seen that his prior offense was in fact a misdemeanor of domestic violence. Pierotti's incorrect answer prompted the government to prosecute him for a violation of 18 U.S.C. § 922(a)(6), which makes it a federal crime knowingly to make false statements in connection with the purchase of a firearm.

At Pierotti's trial, the district court instructed the jury on the definition of the word "knowingly" in section 922(a)(6). In doing so, it included (over Pierotti's objection) the ostrich instruction, which informs the jury that one way to find that the defendant acted "knowingly" is if he strongly suspected his statement was false and deliberately avoided the truth in making it. The jury found Pierotti guilty, and he was sentenced to six months' house arrest and one year of supervised release. He now appeals, arguing that the district court erred by providing the ostrich instruction, that his actions did not meet its definition of "knowingly," and thus that he is entitled to a new trial. We conclude that the instruction was proper, however, and so we affirm the conviction.

**I**

In October 2011, Pierotti pleaded no contest in Wisconsin Circuit Court to the crime of battery upon a woman who was his fiancée at the time. This was a misdemeanor offense. Just over a year later, Pierotti decided that he wanted to hunt for deer during the upcoming fall season. He first obtained a rifle hunting license at a local sporting goods store. At some point soon afterward, he ran into a friend who was a local sheriff. Pierotti informed the friend that his probation from his battery misdemeanor had expired, and asked him whether Pierotti could legally go gun hunting from that point forward. The friend asked if Pierotti's prior conviction was for a felony; because it was not, the friend (mistakenly) told Pierotti that he was "good to go," but advised him to ask his probation officer as well. Pierotti did so, and received the same answer. In Pierotti's retelling, the officer also based her response on the fact that Pierotti had not previously been charged with a felony.

Following these conversations, Pierotti visited the Walmart in Berlin, Wisconsin, on November 8, 2012. He selected a rifle and spoke to a clerk about buying it. After taking Pierotti's driver's license, the clerk instructed Pierotti to fill out ATF form 4473 at a computer kiosk in the store. (This is a form required by the federal Bureau of Alcohol, Tobacco, Firearms and Explosives.) After answering several other questions, he arrived at question 11-i, which asked: "Have you ever been convicted in any court of a misdemeanor crime of domestic violence?" Pierotti clicked "Yes." At trial, he explained that he knew at the time that he had been convicted of a misdemeanor, and "that's why I just instinctively just clicked on 'yes.'" After responding to the remaining

questions, Pierotti submitted the form; a pop-up window then appeared. It said, "We recommend reviewing Section A at this time to make any changes/corrections that may be necessary." After seeing this message, Pierotti went back through his answers, and changed only one—his response to question 11-i. At the time, he recalled later, that question was "the only one that's bugging me now," and it suggested to him that the computer "knows something that I don't know." Pierotti also thought back to his probation officer's opinion that he could legally go hunting with a gun given his lack of a *felony* conviction. So he changed his "Yes" answer to "No," and submitted the form again. He did not, however, click on a blue link (labeled "Click to See Instructions for Question 11.i") below question 11-i before doing so. If he had, a long definition of "misdemeanor crime of domestic violence" would have appeared in a sidebar on the side of the screen. The text in the sidebar would have shown clearly that Pierotti's prior conviction was in fact a misdemeanor crime of domestic violence. The same information was available on the paper copy of the form, which Pierotti signed.

Pierotti was indicted for violation of 18 U.S.C. § 922(a)(6) in March 2013. At trial, no one disputed that one element of the charge required the government to show that Pierotti had acted knowingly, and so the court prepared an instruction telling the jury that:

> A person acts knowingly if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, you may consider

all of the evidence, including what the defend-
ant did or said.

That is where Pierotti argues the instructions should
have stopped. The government, however, contended that the
court should also include an ostrich instruction, which am-
plifies the definition of "knowingly." The district court
agreed to do so, and added the following paragraph to the
language set out above:

You may find that the defendant acted
knowingly if you find beyond a reasonable
doubt that he had a strong suspicion that the
statement he made was false and that he delib-
erately avoided the truth. You may not find
that the defendant acted knowingly if he was
merely mistaken or careless in not discovering
the truth, or if he failed to make an effort to
discover the truth.

This language was taken from Seventh Circuit Pattern In-
struction 4.10. Pierotti has not objected to the particular lan-
guage of the instruction the court gave, and thus we have no
need to decide whether the definition in *Global-Tech Appli-
ances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070–71 (2011), re-
quires a fresh look at our pattern instruction. See *United
States v. Salinas*, 763 F.3d 869, 880–81 (7th Cir. 2014) (reserv-
ing that question because the result in the case would not
have been affected). He decided instead to take an all-or-
nothing approach.

The court provided several reasons for giving the instruc-
tion. It first discussed Pierotti's conversations with his sheriff
friend and his probation officer. The court noted that al-

though Pierotti had asked each of them whether he could hunt, he did not ask a lawyer or someone with knowledge of federal gun laws, nor did he ask specifically whether his battery conviction constituted a misdemeanor crime of domestic violence. "[T]he question here is not whether he could hunt," the district court said, "or even whether he could possess a gun." The court also pointed to Pierotti's failure to read the instructions that accompanied the computer version of question 11-i or the paper version of form 4473, which likewise provided the relevant definition. "So all that is sufficient to give the instruction," the district court said.

Pierotti had introduced substantial evidence at the trial that his incorrect answer to question 11-i was, at worst, mistaken, careless, or the result of insufficient diligence. Had the jury accepted any of those explanations, it would have had to acquit under the court's instruction. But it did not. It instead found Pierotti guilty, meaning that it must have found either that he realized what he was doing and had *not* acted through "ignorance, mistake, or accident," or that he had "a strong suspicion that the statement he made was false and that he deliberately avoided the truth."

## II

As he did at trial, Pierotti now argues that the district court erred as a matter of law by giving the ostrich instruction, because (he says) the facts cannot support a finding that he deliberately avoided knowledge in the manner the instruction describes. We review a district court's decision to give an ostrich instruction for abuse of discretion, and in doing so we view the evidence in the light most favorable to the government. *United States v. Green*, 648 F.3d 569, 582 (7th Cir. 2011). If Pierotti can show that the district court erred in

providing the instruction, we will reverse his conviction unless the government shows that the error was harmless beyond a reasonable doubt. *United States v. Malewicka*, 664 F.3d 1099, 1108 (7th Cir. 2011).

Pierotti was indicted under 18 U.S.C. § 922(a)(6), which makes it illegal "knowingly to make any false or fictitious oral or written statement" in connection with the purchase of a firearm or ammunition from a licensed dealer, such as Walmart in this case. The ostrich instruction describes one way in which the prosecution may prove a "knowing" act. Before including an ostrich instruction, a district court must ensure that two preconditions are satisfied: first, the defendant must be claiming a lack of guilty knowledge; and second, there must be evidence in the record that would permit a jury to conclude that the defendant deliberately avoided learning the truth. *Salinas*, 763 F.3d at 879. The instruction should not be given lightly, lest it lead the jury to believe that it may convict the defendant solely on the basis of his negligence. *United States v. Tanner*, 628 F.3d 890, 904–05 (7th Cir. 2010).

Deliberate avoidance as described in an ostrich instruction comes in two forms: physical and psychological. The former is simple enough, as it involves a defendant's going out of her way to avoid seeing or learning something she knows will confirm that her actions are illegal. See *United States v. Gonzalez*, 737 F.3d 1163, 1168–69 (7th Cir. 2013). Psychological avoidance, in contrast, is often defined "as the cutting off of one's normal curiosity by an effort of will," *United States v. Pabey*, 664 F.3d 1084, 1092 (7th Cir. 2011) (internal quotation marks omitted); it does not encompass ordinary ignorance or lack of curiosity. *United States v. Ramirez*,

574 F.3d 869, 877 (7th Cir. 2009). The district court is permitted to investigate the context of a defendant's actions. That inquiry can inform its assessment of whether the evidence would permit the jury to infer that a defendant deliberately avoided the truth about her criminal activity, and hence acted "knowingly." *United States v. Carani*, 492 F.3d 867, 873 (7th Cir. 2007).

Question 11-i on the ATF form was not a tricky one. Indeed, Pierotti initially answered it correctly. As he admitted at his trial, he recalled his misdemeanor conviction when first considering how to answer the question. He confirmed this on cross-examination:

Q  And you answered it "yes" because you knew that you had been convicted of a misdemeanor crime of domestic violence, isn't that true?

A  I had the battery charge that was a misdemeanor, yes.

Only after the computer prompted Pierotti to review his answers did he decide to make a change, but the only change he made was his response to question 11-i. He did so in direct contravention of his knowledge of his prior crime, a battery upon his fiancée. A rational jury could decide that his considered act of changing the correct answer to the wrong answer demonstrated either direct knowledge (as reflected in the first part of the instruction) or deliberate avoidance of the truth (as reflected in the second part). (We note that after Pierotti's conviction, the Supreme Court held that a misdemeanor battery conviction for a crime of domestic violence, very much like Pierotti's, disqualifies a person from possession of a firearm under 18 U.S.C. § 922(g)(9). *United States v.*

*Castleman,* 134 S. Ct. 1405 (2014). In so ruling, the Court rejected the position of the Sixth Circuit panel, which had understood the statute to apply only to violent encounters.)

At trial, Pierotti testified that the computer prompt caused him to wonder whether his response to question 11-i was correct, and that he mentally referred back to his conversations with his sheriff friend and his probation officer, who "said it was okay" and that Pierotti was "good to go." But his descriptions of those conversations make clear that their advice was based on the fact that Pierotti's prior crime was not a felony. Pierotti may not have known why question 11-i was on the form, but he certainly knew that it was about prior *misdemeanors*. Nothing his friend and his probation officer said implied that Pierotti was entitled to misrepresent something on the form. The advice he received, in short, was irrelevant to a question about misdemeanors.

Had Pierotti felt any doubt about whether his battery was covered by question 11-i, it would have been easy for him to resolve it. The clickable link to the instructions was located directly under the question itself; had Pierotti clicked the link, the instructions would have appeared on the same page as the question. The jury was not required to believe his protestations at trial that he lacked sufficient computer skills to know how to click on a link, even though he could manage the computer well enough to complete the form and, when prompted, to go back and revise an answer. Clicking on the "more information" link would have provided information showing that his initial response to the question on the very same page of the electronic form was correct. Instead, he skipped the instructions and changed his answer. On cross-examination at trial, Pierotti admitted he

did not read the instructions. His counsel contended at oral argument that this behavior was lazy, not criminal. Had the jury believed this account, it would have had to acquit under the court's instruction. But it obviously did not. Putting the facts together, Pierotti's admitted knowledge of his prior crime, his initial "Yes" answer, his decision not to read the readily available instructions, and his decision to change the answer to "No" provided an adequate predicate for the district court to give the instruction.

Our conclusion should not be taken as a wholesale endorsement of the district court's reasoning. We have placed no weight, for example, on the court's comment that Pierotti should have consulted "his lawyer or someone with authority on Federal gun laws" about whether he could legally purchase a firearm before attempting to do so. That is the sort of above-and-beyond behavior the absence of which cannot support an ostrich instruction, which, after all, focuses on deliberate avoidance, not an independent duty to do something. There is no evidence that Pierotti went out of his way *not* to speak to a lawyer or a person with similar legal knowledge. We have similarly steered clear of the district court's criticism of Pierotti for not reading the print version of form 4473. It is true that, had he done so, he would have seen the definition of "misdemeanor crime of domestic violence." In fact, however, the computer-screen link was far more accessible. The section of the hard-copy form to which the district court referred is a blur of fine print: at a glance, the font size appears to be about 6 (this opinion is written in 12). It is difficult to find deliberate avoidance in Pierotti's failure to wade through the small-type information on the printed form after he filled out the computerized version.

By contrast, the computerized version of the form invited Pierotti to learn more about question 11-i once the computer sent the form back to him for his review. The instructions link was clearly presented, in regular-size type, and located immediately below the question Pierotti claims gave him so much trouble. Given the context of his choice to change his answer—recall his statement that he initially clicked "Yes" because he remembered his prior misdemeanor—and viewing this evidence in the government's favor, it was not error for the district judge to provide the ostrich instruction over Pierotti's objection.

## III

In sum, we find that the district court did not abuse its discretion in providing the jury at Pierotti's trial with an ostrich instruction, and we AFFIRM his conviction.