# NO. 12-19-00006-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TROY KEVIN MASON,* *APPELLANT* | § | *APPEAL FROM THE 349TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Troy Kevin Mason appeals his convictions for twenty counts of possession with the intent to promote child pornography as alleged in one indictment. In two issues, he argues that the evidence is insufficient to support his convictions and his sentences for the twenty counts constitute cruel and unusual punishment. We affirm.

## BACKGROUND

Each of the twenty counts in the indictment alleges that Appellant intentionally or knowingly possessed with the intent to promote a different digital video containing child pornography. Appellant pleaded "not guilty" and the case proceeded to a jury trial. The jury found Appellant guilty and sentenced him to twenty years of imprisonment for each count. The trial court ordered that counts one through ten be served consecutively, and counts eleven through twenty run concurrently with count ten. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant argues that the evidence is insufficient to support his convictions for possession with the intent to promote child pornography on all twenty counts.

Specifically, he argues that the evidence does not establish his intent to promote child pornography.

**Standard of Review and Applicable Law**

When determining if evidence is sufficient to sustain a conviction, we apply the *Jackson v. Virginia* standard. *See Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010). This standard requires the appellate court to determine whether, considering all the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks*, 323 S.W.3d at 899. In doing so, we defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899; *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Adames v. State,* 353 S.W.3d 854, 860 (Tex. Crim. App. 2011).

Accordingly, the fact finder is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Wise v. State,* 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). When conflicting evidence is presented, we must resolve those conflicts in favor of the verdict and defer to the fact finder's resolution of those conflicts. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. We may not substitute our own judgment for that of the fact finder. *See id.,* 443 U.S. at 319, 99 S. Ct. at 2789; *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can be alone sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The offense of promotion of child pornography is described under penal code Section 43.26(e), which provides that "a person commits an offense if: (1) the person knowingly or intentionally promotes or possesses with intent to promote material described by Subsection (a)(1); and (2) the person knows that the material depicts the child as described by Subsection (a)(1)." TEX. PENAL CODE ANN. § 43.26(e) (West 2016). In pertinent part, Subsection (a)(1) describes possession of child pornography as knowingly or intentionally possessing visual material that

2

visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct. *Id.* § 43.26(a).

The term "promote," as defined under Section 43.25(a) of the penal code, means "to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise or to offer or agree to do any of the above." *Id.* § 43.25(a)(5) (West Supp. 2019). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (West 2011). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist or when he is aware that his conduct is reasonably certain to cause the result. *See id.* § 6.03(b).

**Analysis**

Appellant contends that the evidence is insufficient to prove he intended to promote child pornography because the "trial is devoid of evidence showing any procurement of the computer images for distribution to any third party or engagement in any such similar activity." The State argues that it proved that Appellant made the digital videos depicting child pornography available for others to access and download through "Limewire," a peer-to-peer file sharing program, which is sufficient to establish Appellant's intent to promote child pornography.

At trial, the State called Appellant's former girlfriend, Victoria Freeman, who lived with Appellant from the summer of 2014 until February 2015. Freeman testified that Appellant owned a fuel company that worked on fuel pumps at gas stations. She testified that Appellant had "a lot of computer stuff" and all the computers in the home belonged to Appellant. According to Freeman, as the relationship progressed, Appellant became more controlling and wanted her to "stay in the house" and "didn't want anybody around." On the evening of February 9, 2015, Freeman located child pornography on one of Appellant's thumb drives. After Appellant went to sleep, Freeman took Appellant's car, went to the Palestine Police Department, and reported to Detective David Kassaw that Appellant was in possession of child pornography.

Based upon the information Freeman gave him, Kassaw obtained a search warrant for Appellant's home. Kassaw collected all devices capable of storing digital images and videos including computers, hard drives, external drives, thumb drives, digital cameras, memory cards

3

from the cameras, and a cell phone from Appellant's home. Kassaw located an external Maxtor brand hard drive, a Lexar brand thumb drive, a Sandisk brand thumb drive, and a Lenovo desktop in Appellant's bedroom. Kassaw located a Western Digital hard drive and an HP laptop on a desk inside the living room. Kassaw forwarded all of the devices he collected to the Lufkin Police Department for a preliminary forensic examination.

The State called Jamie Jenkins, a detective and computer specialist with the Lufkin Police Department. Jenkins utilized forensic software to perform a preliminary examination of the electronic devices that Kassaw seized from Appellant's residence. Jenkins performed a preliminary examination on the Maxtor external hard drive seized from Appellant's bedroom. She located a file titled "Limewire Music" from the Maxtor hard drive's root directory. Jenkins testified that the Limewire Music file was created by a program called Limewire, a peer-to-peer network program that allows other Limewire users to share digital files. Jenkins explained that an individual can share files on Limewire by having their computer turned on and the Limewire folder open, which makes the digital files accessible for download by other Limewire users. She testified that she located approximately two hundred digital videos depicting child pornography within the shared Limewire folder on the Maxtor hard drive found in Appellant's bedroom. Jenkins further testified that the shared Limewire file contained over a thousand videos, but she stopped documenting the videos depicting child pornography after two hundred.

Portions of the digital videos that were identified as separate counts in the indictment, and located in the shared Limewire folder, had graphic titles and were published briefly to the jury.[1] Several of the videos found in the shared Limewire folder had the abbreviation "PTHC" in the title. Jenkins testified "PTHC" stands for "pre-teen hardcore," and is commonly associated with digital videos containing child pornography on peer-to-peer networks. Jenkins testified that videos depicting child pornography are not easily accessible on search engines such as "Google." According to Jenkins, Appellant must possess a level of technical sophistication to amass the child pornography collection found on the hard drive, because it was downloaded via Limewire, which required him to download the application and then seek out digital videos depicting child pornography. She explained that the sheer volume of child pornography could not be amassed

---

[1] For example, Count 1 of the indictment refers to a video entitled "[pthc] 6yo Gina Blowjob Daddy in Bathroom [Cumshot in Face! HD] MVI_1860 opva 2014 loli kids 9yo 8yo novinha 7 yo child." Jenkins testified that "6yo" stands for 6 year old child.

quickly, and would take a long time to locate, download, and save. Jenkins testified that she located link files on the Lenovo desktop which indicate that the Lenovo desktop accessed the digital videos depicting child pornography on the Maxtor hard drive.[2] She testified that when the user turned on the desktop, a shortcut to access Limewire would appear on the home screen. Jenkins explained that the desktop could only access Limewire when it was connected to the Maxtor external hard drive.

The State called Erin Mitchell, a forensic computer examiner employed by the Office of the Texas Attorney General, who used specialized forensic software to conduct a full forensic analysis of the devices seized from Appellant's residence. Mitchell testified that she examined the HP laptop which contained thumbnail images and shadow copies of child pornography.[3] Mitchell linked Appellant to the laptop by locating "internet artifacts" such as a Microsoft Windows Live email account for "troymason@apluspump.com" as well as shadow copies of pictures of a boat Appellant attempted to sell by posting on the "Craigslist" website using the laptop. Mitchell testified that she located most of the child pornography on the Maxtor external hard drive, and her findings were substantially similar to Jenkins's. However, Mitchell performed a full inventory on the Maxtor hard drive and located over twelve hundred digital videos depicting child pornography. She testified that the Maxtor external hard drive had been accessed by the laptop. Mitchell confirmed that the shared Limewire folder was set to share and was thus accessible to other Limewire users, who could then download the digital videos depicting child pornography from the folder on Appellant's hard drive. Mitchell also examined the Lexar thumb drive and noted a user created "favorite" folder containing videos depicting child pornography downloaded from Limewire. Mitchell noted that the Sandisk thumb drive contained a user created "fave" folder containing videos depicting child pornography downloaded from Limewire. Based on the totality of the circumstances and her training and qualifications, Mitchell believed that Appellant downloaded all the videos depicting child pornography.

---

[2] Jenkins testified that link files are created by the Microsoft operating system when a user opens a file. Jenkins explained that Windows creates link files to allow the Windows operating system to run faster. She testified that link files are often created without the user's knowledge.

[3] Mitchell explained that a thumbnail is an image created that is a duplicate, smaller image of the image that the user views on the computer. She further explained that shadow copies are snapshots of the Windows operating systems that assist with restoring a Windows system.

Appellant does not dispute that the evidence established possession of child pornography. Instead, he argues that the evidence does not support the jury's verdict that he possessed the child pornography with the intent to promote the material. However, his brief neglects to address the fact that the digital videos depicting child pornography which form the bases of the indictment were located in the shared Limewire folder, and accessible to other Limewire users to download. Several courts have held that making child pornography available for others to access and download through peer-to-peer file-sharing software qualifies as "distribution" or "delivery" to others. *Wenger v. State*, 292 S.W.3d 191, 199 (Tex. App.—Fort Worth 2009, no pet.) (citing *United States v. Sewell*, 513 F.3d 820, 822 (8th Cir. 2008) ("placing a file in a shared folder [in a peer to peer filing program] with descriptive text is clearly an offer to distribute the file"), *cert. denied,* 553 U.S. 1066, 128 S. Ct. 2517, 171 L. Ed. 2d 789 (2008); *United States v. Carani*, 492 F.3d 867, 876 (7th Cir. 2007) (holding that making pornography available on file-sharing software qualifies as "distribution"), *cert. denied,* 552 U.S. 1122, 128 S. Ct. 932, 169 L. Ed. 2d 769 (2008); *United States v. Shaffer*, 472 F.3d 1219, 1223 (10th Cir. 2007) (defendant distributed child pornography to others via his computerized stash)). Moreover, the evidence at trial sufficiently linked Appellant to the devices on which the digital videos depicting child pornography were located. Freeman testified that all the computers in the home belonged to Appellant. Furthermore, the Maxtor hard drive, Sandisk thumb drive, Lexar thumb drive, and HP desktop were located in Appellant's bedroom. The HP laptop, which accessed the Maxtor hard drive, was linked to Appellant by internet artifacts.

Both experts testified that Appellant possessed some level of technical sophistication in order to amass the large collection of child pornography found on his hard drive. Further, Appellant possessed the knowledge to move digital videos out of the shared Limewire folder on the Maxtor hard drive into folders titled "favorite" and "fave" onto the Lexar and Sandisk thumb drives, respectively. The experts agreed that the sheer amount of digital child pornography located on Appellant's hard drive indicates that Appellant devoted significant time and effort to find the videos, download them, and save them to different folders. Moreover, the titles of the videos, as previously discussed, graphically describe sexual acts perpetrated upon children and many contain

the PTHC abbreviation.[4]  The graphically titled digital videos named in the indictment were all located in the shared Limewire folder, and were available to be accessed by other Limewire users.

Accordingly, the evidence, taken as a whole, is sufficient to establish that Appellant possessed child pornography, and did so with the intent to promote the material.  *See* TEX. PENAL CODE ANN. §§ 6.03(a),(b); 43.25(a)(5); 43.26(a), (e); *see also Wenger*, 292 S.W.3d at 199; *Sewell*, 513 F.3d at 822; *Carani*, 492 F.3d at 876; *Shaffer*, 472 F.3d at 1223.  Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found all of the essential elements of possession with the intent to promote child pornography beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 899.  Because the evidence is sufficient to support Appellant's convictions, we overrule his first issue.


## CRUEL AND UNUSUAL PUNISHMENT

In Appellant's second issue, he argues that a sentence of twenty years imprisonment on each count, with counts one through ten to be served consecutively, is grossly disproportionate to the crimes committed and amounts to cruel and unusual punishment.  The State argues that Appellant failed to preserve his complaint because he did not object in the trial court to the imposition of his sentences on these grounds.  Alternatively, the State argues that Appellant's sentence as to each count does not amount to cruel and unusual punishment.

"To preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired." *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd); *see also Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (waiver of complaint of cruel and unusual punishment under the Texas Constitution because defendant presented his argument for first time on appeal); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (defendant waived complaint that statute violated his rights under the United States Constitution when raised for first time on appeal); *Mays*

---

[4] All of the titles of the digital videos alleged in the indictment describe the content of the video in graphic terms and identify the acts as being perpetrated upon children by stating a number followed by "yo," which stands for year old.  Some of the video titles describe the children as "toddler" or "baby" or "baby girl."  Others contain the abbreviation "pedo," presumably an abbreviation for pedophile.  Some of the videos identified in the indictment include the terms "molest" and "rape" as descriptors in the titles.

*v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) ("Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion[;] ... it [is] incumbent upon the [c]ourt itself to take up error preservation as a threshold issue."); TEX. R. APP. P. 33.1.  A review of the record shows that Appellant lodged no objection to the constitutionality of his sentences at the trial court level; therefore, he failed to preserve error for appellate review.[5]  *See **Kim***, 283 S.W.3d at 475; *see also **Rhoades***, 934 S.W.2d at 120; ***Curry***, 910 S.W.2d at 497; ***Mays***, 285 S.W.3d at 889;TEX. R. APP. P. 33.1.

Had Appellant preserved error, we would nonetheless conclude that his sentence on each count does not constitute cruel and unusual punishment.   The Eighth Amendment to the Constitution of the United States provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."   U.S. CONST. amend. VIII.  This provision was made applicable to the states by the Due Process Clause of the Fourteenth Amendment.  ***Meadoux v. State***, 325 S.W.3d 189, 193 (Tex. Crim. App. 2010) (citing ***Robinson v. California***, 370 U.S. 660, 666–667, 82 S. Ct. 1417, 1420–21, 8 L. Ed. 2d 758 (1962)).

The legislature is vested with the power to define crimes and prescribe penalties. *See **Davis v. State***, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd); *see also **Simmons v. State***, 944 S.W.2d 11, 15 (Tex. App.—Tyler 1996, pet. ref'd).  Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual.  *See **Harris v. State***, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); ***Jordan v. State***, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); ***Davis***, 905 S.W.2d at 664.  Appellant was convicted of twenty counts of possession with the intent to promote child pornography, a second-degree felony with a punishment range from two years to twenty years imprisonment.  *See* TEX. PENAL CODE ANN. §§ 12.33(a) (West 2019); 43.26(e), (g).  Furthermore, Section 3.03 of the penal code permits consecutive sentences "if each sentence is for a conviction of [an offense under Section 43.26]."  *See id.* § 3.03(b)(3)(A) (West Supp. 2019).  Thus, the sentence imposed for each count falls within the range set forth by the legislature and the trial court was authorized by statute to order that

---

[5] In his brief, Appellant contends that he preserved this error for review.  He points to a portion of the record where defense counsel responds to the prosecutor's argument for consecutive sentences.  Defense counsel asked the court to allow Appellant's sentences to run concurrently and take into consideration the "limited amount of time in which this was occurring per the evidence, and lack of any prior felonies."  This statement, made prior to the trial court's pronouncement of sentence, is not a timely, specific objection stating the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, nor is the complaint apparent from the record. *See* TEX. R. APP. P. 33.1 (a)(1)(A).  Moreover, the record reflects that, after the pronouncement of sentence, Appellant lodged no objection to his sentences violating his rights under the Eighth Amendment.  *See* U.S. CONST. amend. VIII.

counts one through ten be served consecutively. Therefore, the punishment is not prohibited as cruel, unusual, or excessive per se. *See Harris*, 656 S.W.2d at 486; *Jordan*, 495 S.W.2d at 952; *Davis*, 905 S.W.2d at 664.

Nevertheless, Appellant urges the court to perform the three-part test originally set forth in *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Id.*, 463 U.S. at 292, 103 S. Ct. at 3011. The application of the *Solem* test has been modified by Texas courts and the Fifth Circuit Court of Appeals in light of the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See, e.g.*, *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992), *cert. denied*, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992); *see also Jackson v. State*, 989 S.W.2d 842, 845–46 (Tex. App.—Texarkana 1999, no pet.).

We are guided by the holding in *Rummel v. Estelle* in making the threshold determination of whether Appellant's sentences are grossly disproportionate to his crimes. 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980). In *Rummel*, the Supreme Court considered the proportionality claim of an appellant who received a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses. *See id.*, 445 U.S. at 266, 100 S. Ct. at 1135. In that case, the appellant received a life sentence because he had two prior felony convictions—one for fraudulent use of a credit card to obtain $80 worth of goods or services and the other for passing a forged check in the amount of $28.36. *Id.*, 445 U.S. at 265–66, 100 S. Ct. at 1134–35. After recognizing the legislative prerogative to classify offenses as felonies and, further, considering the purpose of the habitual offender statute, the court determined that the appellant's mandatory life sentence did not constitute cruel and unusual punishment. *Id.*, 445 U.S. at 284–85, 100 S. Ct. at 1144–45.

In this case, the offenses committed by Appellant—twenty counts of possession with the intent to promote child pornography—are even more serious than the combination of offenses committed by the appellant in *Rummel*, while Appellant's sentences are no more severe than the life sentence upheld by the Supreme Court in *Rummel*. Thus, it is reasonable to conclude that if

the sentence in ***Rummel*** is not constitutionally disproportionate, neither are the sentences assessed against Appellant in this case. Because we do not conclude that Appellant's sentences are disproportionate to his crimes, we need not apply the remaining elements of the ***Solem*** test. Appellant's second issue is overruled.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered February 28, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

FEBRUARY 28, 2020

NO. 12-19-00006-CR

**TROY KEVIN MASON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 349th District Court

of Anderson County, Texas (Tr.Ct.No. 349CR-16-32862)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*